[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 503 
This action was brought to recover damages for injuries received at a railroad crossing. The defendant's railroad passed east and west through the city of Binghamton, with two tracks, and Oak street passed north and south intersecting the railroad. The south track was used for eastward bound trains and the north for westward bound trains, and the space between the two tracks was about seven feet. The accident occurred about fifteen minutes after six o'clock, P.M., on the 24th day of August, 1881, before sundown on a clear day. There was a freight train standing upon the south track headed *Page 504 
east which had been cut in two at Oak street, leaving a space of about twenty feet for the passage on the street of persons and teams. The plaintiff, going north in the center of the street, passed through this space and just as he stepped upon the north track was hit by an engine going west and was badly injured.
There was conflict in the evidence as to the defendant's negligence, and since the verdict of the jury it must be assumed that that was sufficiently established. But there was no conflict in the evidence as to the material facts bearing upon the plaintiff's contributory negligence. He was in possession of all his faculties, on foot, entirely unencumbered, with nothing to attend to but his own safety. There is a great preponderance of evidence that he could have seen the train for at least one-third of a mile before it reached Oak street, while he was passing over a space of about sixty feet, until he came within about fifteen feet of the south track of the railroad. But the plaintiff testified that he looked while passing over that space, and did not and could not see the approaching train, and we must, therefore, take the fact to be that he could not have seen the train until he had passed over or nearly over the south track. The north track was straight for at least half a mile toward the east and the moment the plaintiff got upon the middle of the space between the two tracks he could have seen a train approaching from the east for that distance. He was walking very rapidly, perfectly familiar with the location and the use which was ordinarily made of the two tracks, and as he crossed through the opening between the parts of the standing freight train, instead of looking east from which a train would ordinarily come on the north track, he looked to the west and heedlessly stepped immediately in front of the engine. As he passed over the north rail of the south track a single glance to the east would have disclosed to him the approaching train and he would have escaped injury. He was in a place of some peril in crossing these tracks and should have taken some care to protect himself. He was in no danger from the train on the *Page 505 
south track as that was stationary. If that to some extent obstructed his view upon the north track, there was so much greater reason for him to take an observation the moment he had crossed the south track, so as to see whether he could cross the north track with safety, and for not doing so he is chargeable with contributory negligence, which bars his recovery. (Cordell
v. N.Y.C. H.R.R. Co., 75 N.Y. 330; Woodard v. N.Y.L.E. W.R.R. Co., 106 id. 369; Davey v. London S.W.R. Co. [L.R.] 11 Q.B. Div. 213; S.C., affirmed in Court of Appeals, 49 L.T. Rep. [N.S.] 739.)
But there is a circumstance to which the trial judge attached some importance, but for which, as we must infer from the language of his charge, he would have non-suited the plaintiff, to which we must now call attention. There was a brakeman upon the south track in or near the opening between the two parts of the standing freight train. The evidence on the part of the defendant is, that the brakeman warned the plaintiff and attempted to arrest his progress. The evidence on the part of the plaintiff tends to show that the brakeman said nothing and made no sign to the plaintiff, and we must assume his evidence to be true. But it does not appear that the brakeman was stationed there for the purpose of warning travelers upon the street of the approach of trains upon the north track, or in any way for the protection of travelers. He was there simply for the purpose of connecting the two parts of the train when he should be signalled to do that, and hence he omitted no duty resting upon him in not warning the plaintiff. It does not appear that the plaintiff knew he was a brakeman, or that he understood that he was standing there to warn travelers upon the street, or that he supposed that he owed him any duty whatever. And it does not appear that the plaintiff relied upon him for protection, that he was lulled into a sense of security by the absence of any warning, or that his conduct was in any way influenced by his presence there. The plaintiff passed on through the opening apparently giving heed to nothing, at a rate of speed characterized by the trial judge as *Page 506 
"almost approaching a run." It is, therefore, impossible to perceive how the presence there of the brakeman relieved the plaintiff from the duty of the vigilant use of his senses to secure his own safety. If the brakeman had in any way invited the plaintiff to cross or had given him any assurance that it was safe to cross. the case would be different. The case would also be different if the plaintiff had known that the brakeman was placed there to warn travelers of the approach of trains, and if as he approached, the brakeman seeing him had given him no warning. It may be that in such a case it would have been a question of fact for the jury to determine whether or not the plaintiff was guilty of negligence in crossing without looking for himself to see whether a train was approaching. It was, however, after great consideration held otherwise in the case ofDavey v. London South-western Railway Company (supra), which is singularly like this. There the defendant's railway crossed a public footway on the level. The plaintiff, a foot passenger, while in the day time crossing from the down side to the up side of the railway was knocked down and injured at the crossing by a train of the defendant on the up line. Owing to the position of certain buildings which stood by the line, it was impossible for any one crossing from the down line, to see a train coming until he got within a step or two from the down line, but a person standing on the down line or the six foot, had a clear and uninterrupted view up and down the line several hundred yards. The plaintiff stated that before crossing he looked to the right along the down line, but he admitted that he did not look to the left along the up line, and that if he had looked he must have seen the train coming. The engine driver did not whistle. There was a servant of the company employed as a gate-keeper at the crossing, standing near the crossing, but he gave no warning to the plaintiff that a train was coming. The plaintiff was non-suited, and the court held, among other things, that the presence of the gate-keeper, who gave no warning, did not excuse the plaintiff from looking out for his own safety. *Page 507 
We are, therefore, of opinion that the plaintiff should have been non-suited, and hence the judgment should be reversed, and a new trial granted, costs to abide event.
All concur, except DANFORTH, J., dissenting.
Judgment reversed.