ZAUN v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department.   July 29, 1910.)

1. DEATH (§ 58*)—ACTIONS—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF—
EVIDENCE.
   Though in death actions less evidence is required to establish freedom
   from contributory negligence than though the injured person were living
   and could testify, the burden of proof still rests on deceased's representa-
   tive to introduce some evidence on that point.
      [Ed. Note.—For other cases, see Death, Cent. Dig. §§ 75–78; Dec. Dig.
   § 58.*]

2. RAILROADS (§ 328*)—CROSSING ACCIDENTS—DUTY OF ONE CROSSING TRACK.
   If the view of one approaching a railroad crossing where there are
   double tracks is obstructed by a train passing on one track, it is his duty
   to wait until such train passes before attempting to cross the other track.
      [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1057–1070;
   Dec. Dig. § 328.*]

3. RAILROADS (§ 346*)—CROSSING ACCIDENTS—LOOKING AND LISTENING—EVI-
DENCE—PRESUMPTIONS.
   That one killed by a railroad engine at a crossing looked to see if
   there was a train approaching will not be presumed, but must be proved.
      [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1117–1123;
   Dec. Dig. § 346.*]

4. RAILROADS (§ 348*)—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE—
SUFFICIENCY OF EVIDENCE.
   In an action against a railroad for death of one struck by a train at
   a crossing, evidence *held* to show deceased guilty of contributory negli-
   gence.
      [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150;
   Dec. Dig. § 348.*]

   Hirschberg, P. J., and Woodward, J., dissenting.

Appeal from Trial Term, Nassau County.

Action by Emma Zaun, as administratrix, etc., of William Zaun, deceased, against the Long Island Railroad Company. From a judgment dismissing the complaint and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, BURR, and THOMAS, JJ.

R. A. Mansfield Hobbs, for appellant.
Matthew J. Keany (Edward Kelly, on the brief), for respondent.

BURR, J.   This action was brought to recover for the pecuniary injury resulting from the death of William Zaun on the 7th of July, 1908.   He was killed at the junction of Bay View avenue and the tracks of the Long Island Railroad.   At that point the tracks run approximately east and west.   The deceased was approaching the tracks from the north, riding upon a bicycle.   The first track that he would come to was the track upon which the east-bound trains, running from New York to Patchogue, pass.   Over the more southerly track, trains passed in a westerly direction, running from Patchogue to New York.   He was killed by a train upon this track.

At the close of plaintiff's case, and again at the close of the entire case, defendant moved for a nonsuit. The court reserved decision, and submitted the case to the jury. The jury disagreed, and thereafter the court granted the motion for a nonsuit, and from the judgment entered thereon this appeal is taken.

There was sufficient evidence to require the submission to the jury of the question of defendant's negligence. Plaintiff not only failed to establish freedom from contributory negligence on the part of the deceased, but established affirmatively that the accident was due to his want of care.

Three witnesses were called for plaintiff. None of them actually saw the train strike the deceased, although one of the witnesses saw him when within a very few feet of the northerly rail of the west-bound track. Deceased's body was found lying about six or seven feet from that point. He had lived in the neighborhood for some time, and was thoroughly familiar with the location and surroundings. It was claimed, and probably correctly, that the crossing was somewhat dangerous because of the frequent passing of trains over the tracks, and of vehicles and pedestrians across the road. As the deceased approached the first or east-bound track from the north, going in a southerly direction, a train passed along going easterly, consisting of four or five cars.

The witness Bloom testifies that just after the east-bound train had passed he noticed a train coming on the southerly track, bound west. He did not notice the man on the wheel until he had been struck.

The witness Bedell testified that he observed the deceased waiting until the east-bound train on the northerly track had passed, when he started to cross the track and kept moving along on his wheel. He did not notice him until he was struck.

But the witness Gilmore, who was called for plaintiff, testified that he observed the deceased, after the east-bound train had passed, go right behind it; that he saw him look toward the west, whence the train from New York was coming on the first track that he approached; that he did not look toward the east, from which the train that struck him was coming, and he was sure of that because he kept watch of him all the time. This same witness testified that, when 20 feet north of the first track, it was possible to see 320 feet to the east. Other witnesses put the distance greater, and say that at 40 feet from the northerly line of that track one could see in an easterly direction 800 feet, and when one got upon the northerly track upon which the first train was running, and between the tracks, one could see for half a mile, or 3,000 feet, in an easterly direction. No witness testifies to any permanent obstruction which would prevent deceased from seeing the approaching train in ample time to avoid a collision with it.

Although, in the case of the death of an injured person, less evidence is required to establish freedom from contributory negligence than though the injured person was living and could testify, the burden of proof still rests upon the representative of the deceased to introduce

some evidence upon that point. As I have before stated, plaintiff's evidence establishes affirmatively that the deceased did not look in the easterly direction at all, and that, if he had looked before going upon the west-bound track on which the train that injured him was coming, he could have seen the train more than half a mile away. It is quite apparent that, seeing the train going east, he assumed that was the only train passing at that time, and passed along immediately in the rear of that train without looking in the other direction to see if there was a train coming. If his view of the train coming from the east was temporarily obstructed by the train passing on the other track, it was his duty to wait until that temporary obstruction had disappeared. Heaney v. Long Island R. R. Co., 112 N. Y. 122, 19 N. E. 422; Daniels v. Staten Island Rapid Transit Co., 125 N. Y. 407, 26 N. E. 466; Turck v. N. Y. C. & H. R. R. R. Co., 108 App. Div. 142, 95 N. Y. Supp. 1100. It will not be presumed that the deceased looked to see if there was a train approaching; it must be proved. Tucker v. N. Y. C. & H. R. R. R. Co., 124 N. Y. 308, 26 N. E. 916, 21 Am. St. Rep. 670. The evidence establishes affirmatively that the deceased did not look.

The judgment and order appealed from should be affirmed, with costs.

JENKS and THOMAS, JJ., concur.

WOODWARD, J. (dissenting). I am unable to concur in the opinion of Mr. Justice BURR that the evidence in this case establishes affirmatively that the plaintiff's intestate was guilty of contributory negligence. On the contrary, I think a fair case was presented for the jury. It is true that one of plaintiff's witnesses testified that he saw the deceased as he approached the defendant's tracks looking to the west—the direction from whence came the train from New York on the track nearest the plaintiff's intestate—and that he did not look to the east, but he subsequently modified this by saying:

"I won't say he didn't look to the east. I cannot say he constantly kept his eyes toward the west. He was looking that way. A man doesn't always have his gaze rigidly fixed in one direction. * * * The last time I saw this man before I observed him spinning around the north side of the track was when he was on my side of the east-bound train."

The witness lived on the side of the railroad nearest the east-bound track—the south side—so that his testimony is to be understood as thus modified. In other words, the witness saw the plaintiff's intestate approaching the southerly track of the defendant's railroad. He saw him looking toward the west, the direction from which the train on the southerly track was approaching, and he saw him running very slowly with his gaze turned generally to the west. He saw the deceased pause for this east-bound train to pass, and the last time he saw him, until he saw him spinning around the north side of the track, "was when he was on my side of the east-bound train." So that this witness, who is the only one who pretends to have observed the plaintiff's intestate closely enough to say which direction he was looking, merely testifies

that the deceased was looking in a westerly direction all of the time prior to the passing of the east-bound train; that he was, in fact, exercising that degree of care, in respect to the east-bound train, which the circumstances demanded. This witness does not pretend that he saw the deceased after the east-bound train went along, until the moment following the actual contact. He says: ·

"When that train passed he went right across, and I didn't see him again until he got to the other side, because the other train hid the view."

And he subsequently explained that he meant by the "other train" the train going west. So far as appears from the testimony, therefore, the plaintiff's intestate was in the exercise of due care at all the times that he was within the view of this witness; he was on the south side of the tracks looking west—looking in the direction from which a train was at the time approaching—and he halted and let this train pass. When it had passed he proceeded on his way, out of the view of the witness now under consideration, so that the evidence clearly fails to show affirmatively that the deceased did not look to the east before entering upon the west-bound track, and the fact that he had exercised reasonable care in respect to the east-bound track certainly does not raise a presumption that he failed to do so in respect to the west-bound track.

The undisputed evidence is that the west-bound train struck the rear wheel of the deceased's bicycle; he was nearly out of danger at the time of the contact. The witness testifies that the east-bound train left a cloud of dust. The distance between the tracks was not great, and it may well be that the deceased, looking to the east, saw the approaching train and believed that he had time to cross. There was evidence in this case from which a jury might reach the conclusion that the usual whistling and ringing of the bell of the defendant's approaching train was omitted, and, if this was true, the plaintiff, being familiar with the custom, might have relied in some measure upon this fact, and have acted accordingly, or he may have been momentarily blinded by the flying dust after the east-bound train had passed, and thus have been exposed to dangers by reason of the defendant neglecting to give warning of its approaching train. It is certain that the deceased, at the last time he was seen by any one prior to the accident, was in the exercise of due care, and this fact, in connection with all of the facts and circumstances detailed by the evidence, might fairly lead to the inference that the deceased continued to act with that degree of care which a reasonably prudent man would or should use under the circumstances, and it was error, therefore, for the court to grant the motion for a nonsuit. See Woodworth v. N., Y. C. & H. R. R. R. Co., 55 App. Div. 23, 66 N. Y. Supp. 1072. The track at this point is on a seven-degree curve. The view is somewhat obstructed, and the deceased, going upon the crossing immediately in the rear of the east-bound train, was not able, perhaps, to get a clear view of the track. True, of course, if the view was momentarily obstructed, he owed some duty of care not to rush into a position of danger; but he had no reason to anticipate the immediate danger if the defendant

failed to give the usual warning, and he was not bound to use the highest degree of care, only just reasonable care, and if this required looking or listening, under all of the circumstances of the case, then it was his duty to do these things; but what was reasonable care under all of the circumstances of this case is not one of law purely. It is a mixed question of law and fact, and the jury should be given an opportunity to decide the issue. I think there was some evidence that the deceased was exercising reasonable care. He did exercise that care in reference to the first track. He was apparently mindful of the dangers, and to presume that he suddenly changed his attitude of care, and wholly disregarded his obligations within a few seconds of time, is hardly warranted. At least such an inference should not be drawn by the court.

I think the judgment and order should be reversed, and a new trial granted.

HIRSCHBERG, P. J., concurs.