It does appear affirmatively that the plaintiff used the portion of his mother's estate paid to him as if it were his own. He did not separate it nor hoard the income, and when he went into bankruptcy in 1904 whatever was left was turned over to his trustee in bankruptcy, who received it as if it belonged to the bankrupt.

All this had taken place before Weltha made her will January 19, 1911. No effort was made by her in her lifetime to keep separate from her general estate the property she had received from the plaintiff and his coexecutors of her mother's will, and in her own will no separation is contemplated. The children of her deceased brothers are generously provided for, and a trust is created in favor of the plaintiff for his life, with remainder to his children.

The practical interpretation which seems to have been placed upon the mother's will by his family, and particularly by the plaintiff, for nearly 30 years, should not now be disturbed by the court, unless there are most imperative reasons for such action. Reid v. Sprague, 72 N. Y. 457; Matter of Marx, 117 App. Div. 890, 103 N. Y. Supp. 446.

A decree may be made declaring that upon the death of Emma Bacon, the testatrix, each of her six children became entitled absolutely to the distributive share actually received by him or her, and that the contingent death of any one of said children referred to in the third clause of the will was intended by the testatrix to be a death in the lifetime of said testatrix.

As there is no longer an estate of Emma Bacon out of which costs could be paid, no costs are allowed.

Judgment accordingly.

---

(84 Misc. Rep. 506)

### CANDEE v. PENNSYLVANIA R. CO.

(Supreme Court, Trial Term, Cattaraugus County. March, 1914.)

1. NEW TRIAL (§ 66*)—VERDICT CONTRARY TO INSTRUCTIONS.

A verdict contrary to the instructions will be set aside.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 132–134; Dec. Dig. § 66.*]

2. NEW TRIAL (§ 72*)—INSUFFICIENCY OF EVIDENCE.

Where, in an action by an intending passenger to recover for injuries received when struck by a moving train as it entered the station, evidence of contributory negligence was clearly apparent, a verdict for plaintiff was against the weight of the evidence requiring a new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 146–148; Dec. Dig. § 72.*]

Action by Frank Candee against the Pennsylvania Railroad Company. Verdict for plaintiff. Motion for new trial granted.

Dowd & Quigley, of Salamanca (Thomas H. Dowd, of Salamanca, of counsel), for plaintiff.

Hastings & Larkin, of Olean (Allen J. Hastings, of Olean, of counsel), for defendant.

BISSELL, J. A careful review of the evidence in this case convinces me that it is my duty to set aside the verdict of the jury and

grant the defendant a new trial. The undisputed facts seem to establish the contributory negligence of the plaintiff.

The plaintiff at 9 o'clock on the morning of September 9, 1911, a bright clear day, arrived at Keating Summit, Pa., on a train which ran into the station of the Buffalo & Susquehanna Railroad Company, with the intention of proceeding northerly to Port Allegany upon a train of the defendant, whose station was near but west of the station of the former railroad. Passengers are interchanged at this point. Plaintiff proceeded directly from the station where he had arrived to the defendant's station, and then across the station platform and three intervening tracks or sidings, along a cross-over platform, to the landing platform provided by the defendant along its easterly track for the accommodation of passengers in taking and alighting from its north-bound trains. This platform, which was constructed of planking 5 feet wide and 229 feet long, was practically level with the surface of the cinder filling between its westerly edge and the east rail of the north-bound track. The distance from this edge to the rail was from 24 to 25½ inches. The plaintiff and other intending passengers deposited their baggage along the easterly side of this landing platform at a point a short distance south of the cross-over platform. The defendant's north-bound train was about one hour late, and the plaintiff remained on the landing platform in the company of about 35 other passengers who were also awaiting the arrival of the train for the north. For a period of time prior to its arrival, the plaintiff and two friends stood at the extreme southerly end of this platform. Finally they saw an engine which was the engine used by the defendant to assist the north-bound train to ascend the grade from Emporium to Keating Summit, coming north out of the cut through which the defendant's tracks curved southwesterly. This helper engine ran onto one of the intervening side tracks east of the landing platform and stopped. Plaintiff then proceeded up the landing platform northerly, following his two friends in single file to get his baggage, and after he had proceeded some distance turned westerly, without leaving the platform, to pass a woman who stood in the way, and was struck by the pilot beam of the locomotive which was drawing the train into the station. The pilot beam projected 29 inches out from the rail. Plaintiff claims that this train ran in quietly along the north-bound track without his knowledge; that he had not seen it, and that the pilot beam overlapped the landing platform several inches. The two locomotives (the "double header") which had drawn the train up the grade from Emporium to Keating Summit stopped at or near a signal tower or semaphore, and after the helper engine had been detached and run upon the siding, the train, drawn by a single engine, proceeded into the station. The distance from the south end of the landing platform where plaintiff was standing when the train stopped at the semaphore is 470 feet, and a person standing at this point could see, as testified to by plaintiff's engineer, 100 feet beyond the semaphore into the cut.

The defendant's engineer testified that a train coming north through the cut could be seen 700 feet; but, accepting the evidence of the

plaintiff as true, a person standing where the plaintiff stood had an unobstructed view of an approaching train for a distance of at least 570 feet. The train was running at a slow rate of speed. Plaintiff by his own testimony concedes that he had been a traveling salesman for 25 years prior to the accident, and had been traveling over the same territory and changing cars at Keating Summit once in every 5 or 6 weeks for a period of 15 years, and usually took the same train by which he was injured, and was familar with the situation at Keating Summit. He expected that the train might arrive at any moment, and while standing at the southerly end of the platform learned the fact that there was an engine coming out of the cut and toward the platform. He admits that he looked toward the south in order to see this helper engine.

As the approaching train could have been seen at a point nearly 600 feet from where plaintiff was standing, it is a fair inference from the evidence that he saw it or was notified of its approach and for that reason turned about with his friends and walked northerly along the landing platform in order to be ready to enter the train as soon as it arrived at the station. It was therefore negligence on the part of the plaintiff to place himself in such close proximity to the train as it entered the station that he was liable to be injured.

It would seem to be unnecessary to discuss the proposition of whether or not the court erred in submitting to the jury, as the only question bearing upon the claim of defendant's negligence, or whether or not the finding of the jury was against the weight of the evidence on that point, the question of whether the defendant gave a proper warning signal of the approach of the train to the station. If the plaintiff saw the train, or knew of its approach, it is immaterial, as affecting the disposition of this motion, whether a warning signal was given or not. There is no evidence in the case that either the platform or the engine was not properly constructed.

The court charged the jury:

"That if you shall find from the evidence that the plaintiff could have seen this train in the cut, and that he did see this train in the cut and knew of its approach, it was his duty to exercise due care and caution as the train entered the station to avoid injury."

And further:

"That if the plaintiff, had he looked, could have seen the train all the way from the point where it stopped at the semaphore to the station, and knew that it was liable to come at any moment, then he cannot recover."

The finding of the jury was clearly contrary to these instructions and against the weight of evidence.

[1] Where a jury has found a verdict contrary to the instructions of the court, it will be set aside. Rogers v. Murray, 16 N. Y. Super. Ct. (3 Bosw.) 357; Kaplin v. Shapiro, 53 Misc. Rep. 606–609, 103 N. Y. Supp. 922; Benjamin v. Village of Tupper Lake, 110 App. Div. 426–428, 97 N. Y. Supp. 512.

[2] The plaintiff knew that the train which injured him and which he was waiting to take was past due and was expected at any moment. He had an unobstructed view for a distance of 570 feet in the direc-

tion from which the train was to approach. He saw other people coming out from the station ostensibly for the purpose of taking the train. His friends with whom he was talking asked where he left his baggage and started to get theirs, he following. According to his own testimony, he had every reason to believe that the train was approaching this station, and he acknowledges that he saw the helper engine; and yet he tells us that he not only did not look, which he could have done easily, for the purpose of ascertaining whether or not the train was approaching, but deliberately and with his back turned in the direction from which he knew the train was coming, and when he was advancing up the platform to get his baggage, stepped to the outer edge of the platform to pass around a woman who was standing in the way, and was struck in the left side and injured. The contributory negligence of the plaintiff is so apparent as to bar a recovery in this action. White v. N. Y. C. & H. R. R. Co., 68 App. Div. 561, 73 N. Y. Supp. 827, affirmed 174 N. Y. 543, 67 N. E. 1091, without opinion; Pennsylvania R. Co. v. Bell, 122 Pa. 58, 15 Atl. 561; Matthews v. Penn. R. Co., 148 Pa. 491, 24 Atl. 67; Young v. N. Y., L. E. & W. R. Co., 107 N. Y. 500, 14 N. E. 434; Woodard v. N. Y., L. E. & W. R. Co., 106 N. Y. 369, 13 N. E. 424; Hagglund v. Erie R. R. Co., 210 N. Y. 46, 103 N. E. 770.

The motion for a new trial is granted, with costs to the defendant to abide the event.

Motion granted, with costs to abide event.