ERNA H. FISCHER, as Administratrix of the Estate of ERNEST HOPPE, Deceased, Plaintiff, *v.* NEW YORK CENTRAL RAILROAD COMPANY et al., Defendants.

Supreme Court, Trial Term, Ulster County, January 2, 1947.

*John E. Egan* and *Lloyd R. LeFever* for plaintiff.

*Harry H. Flemming* for New York Central Railroad Company, defendant.

*Andrew J. Cook* for Walter G. Williams and another, defendants.

*Peter H. Harp* for Ulster County Construction Co., Inc., defendant.

BERGAN, J. This case requires an examination again of that delicate problem which has had so long and controverted a history in the New York courts: When, in a railroad crossing accident, the issue of contributory negligence of the deceased is to be left open for the determination of the jury.

Ernest Hoppe was the owner of an automobile. On March 21, 1943, he was riding in the automobile, then being driven by Fritz Kuebler. In crossing the tracks of the Wallkill Valley line of the New York Central Railroad on a private crossing near Binnewater in Ulster County, the car was struck by a train. Hoppe, the owner was killed; Kuebler, the driver survived.

The road made a sudden turn onto the tracks at the crossing. Visibility approaching the crossing was poor. The crossing itself could not be seen until a driver was very close to it, and at the crossing the view to the north along the track, from which direction the train was coming, also was poor.

The obstruction to view toward the north was in large part due to a rock embankment along the railroad which ended at the road. An engineer testified for the railroad that from a point 11 feet on the road to the east rail of the track a view of 385 feet north of the crossing along the track could be had of a 6-foot rod held by a man; from a point 50 feet away, where the road began a slight downward grade, a view of only 114 feet could be had. Plaintiff contended the practical limiting effect of the obstruction to a driver approaching the crossing was greater than this.

The use made of the private crossing by the general public in reaching a lake resort located near the crossing was intensive enough to require the railroad to treat it as a public crossing and to give adequate warning of the approach of trains. No warning by whistle or bell was given of the approach of the train involved in the accident. Although controverted in some respects by the railroad company on the trial, the fact was necessarily determined by the jury in favor of the administratrix of Hoppe by its verdict for her of $10,000. Upon these points there was evidence to give foundation to the verdict and in passing upon the motion addressed to the verdict the facts most favorable to it and within the power of the jury to decide must be assumed. Upon the motion for a dismissal of the complaint the inferences to be drawn from the record most favorable to plaintiff's case must likewise be assumed.

The deceased owner of the car was acquainted with the crossing. He had been over it before. The driver, Kuebler,

had never been over the crossing before, did not know the crossing was there and did not see it until he was actually on it, a moment before the car was struck. But the owner, being present with the driver, was constructively in control of the vehicle (*Gochee* v. *Wagner*, 257 N. Y. 344). The case must be treated as though the deceased himself, with the knowledge he had acquired of the crossing, was actually at the wheel, and he must be responsible for the driver's actions as well. The jury were instructed on this point in considering whether the deceased was negligent, and this question, like the other factually disputed points in the case, was resolved by the verdict in favor of the plaintiff. The jury could, and presumably did, find that just before the accident the deceased was looking up the track and that before going on the track the car was moving slowly.

The problem now is whether, with the fact demonstrated that deceased was acquainted with the crossing and its poor visibility in approach and view of the track to the north, the question of his contributory negligence must be taken from the jury and disposed of as a matter of law.

If, within the frame of established facts, the conclusion can be reached that contributory negligence as a matter of law is not in the case, the subject can be argued freely and at wide range to the jury and decided one way or another. But contributory negligence as a matter of law needs careful definition and the boundaries of factual pattern must be set if there is to be any reliable standard to guide the judgment of the profession when a case ought not to be prosecuted and to guide the judge in saying when the subject should be withdrawn from the jury.

With statements of general principles in decided cases there is usually to be found a common agreement among the profession. The troublesome thing is to apply the principles to the hard facts of the case at hand and very often, in this subject especially, it is needed to sift through what was said in the cases to find what was decided.

Perhaps, the leading case in New York, and certainly one that is very often cited, is *Schrader* v. *N. Y., C. & St. L. R. R. Co.* (254 N. Y. 148). In the opinion *Per Curiam*, which represented a synthesis of the views of the very strong judges composing the majority (CARDOZO, POUND, LEHMAN, KELLOGG and O'BRIEN), the main principles to be applied were formulated. If there is familiarity with the crossing and heedlessness of ordinary precautions in a known dangerous place, no question for the jury exists (p. 151). There the deceased was familiar with the crossing. His view was obstructed until he was twelve

to fifteen feet from the rail; even then he would have to look over his shoulder to view the tracks. He drove on without looking. The case was held to present contributory negligence as a matter of law.

This was decided in 1930. But in 1942 it was decided in *Flynn* v. *Long Island R. R. Co.* (289 N. Y. 283) that the driver of a truck who had been proceeding on a road parallel to the track and whose view to his rear, from which direction the train came, was limited by the construction of the truck was not negligent as a matter of law, even though when he had completed his turn to cross the tracks, his view was entirely unobstructed. He began to turn about fifty feet from the center of the track. The nature of the negligence of the railroad company, i.e., the failure to give timely warning, was taken as an element to be considered in the contributory negligence of the deceased, a concept which is apparent in some of the earlier cases, including *Schrader* v. *N. Y., C. & St. L. R. R. (supra,* p. 151).

Where it would be required to look in both directions in approaching a crossing, the fact that deceased, who was not shown to have been familiar with the crossing, could see a train approaching from his right when he was 105 feet or less from the crossing was held not contributory negligence as a matter of law, since it might be found he was, during this part of his approach to the track, looking in the other direction. (POUND, J., in *Chamberlain* v. *Lehigh Valley R. R. Co.*, 238 N. Y. 233). This principle could be applied alike to all crossings hampered by obstructed or partially obstructed view of tracks. But in *Crough* v. *New York Central R. R. Co.* (260 N. Y. 227) the driver was familiar with a crossing where the jury might say the view was obstructed by trees and underbrush until one got right on the tracks. The approach to the tracks was up a grade requiring the use of low or second gear. The tracks could not be seen except momentarily at another railroad crossing nearby. The court, in an opinion by POUND, then Chief Judge, felt the driver was negligent as a matter of law because if he had looked both ways and checked the speed of his car (which apparently had to approach the crossing in low or second gear in any event) inevitably, so the opinion suggested, the collision would have been averted (p. 231).

In *Proefrock* v. *Denney* (258 App. Div. 5, opinion by LEWIS, J.) the facts give a classic presentation of contributory negligence as a matter of law. Deceased was familiar, by daily use of the crossing at a particular time of day, both with the crossing itself and with the direction of approach and with the scheduled

time of the train which also ran daily. When he was twenty-seven feet from the tracks, his view was unobstructed for more than 600 feet. His truck apparently ran into the train. The court held that there was contributory negligence as a matter of law, a view in which the Court of Appeals concurred (283 N. Y. 648).

Where a driver approached a crossing at five or six miles an hour, looked in both directions as he approached the track, at a crossing so obstructed that it was necessary to be almost on the track before a train could be seen — about fifteen to nineteen feet from the rail — the case was held not to show contributory negligence as a matter of law (*Horton* v. *N. Y. C. R. R. Co.,* 237 N. Y. 38, 49).

These cases suggest the obstacles inherent in the formulation and application of a rule of law which will clearly define, in all the variable situations that can exist in the use of grade crossings, the conditions under which a case is to be taken from the jury on the issue of contributory negligence.

I reach the conclusion here that in view of the obstructed vision in the approach to this crossing; of the effect of the failure of the train to give warning; of the slow approach of the decedent's car, which suggests at least some degree of care in its operation, and of the fact decedent was using some degree of observation, that the case is not one for the court alone to evaluate the question of negligence upon the theory of an absence of ordinary precaution, but that the question ought to be left with the jury.

The motion of the defendant railroad company for a nonsuit and for a dismissal of the complaint, and its motion to set aside the verdict are denied.

The jury's verdict also was given in favor of the plaintiff against the individual defendants Williams and Lebert, but in favor of the defendant Ulster County Construction Company. The theory of the plaintiff in the case of Williams and Lebert is that they owned a resort open by general invitation to the public and usually reached over the grade crossing; that deceased was coming there under this invitation; that the defendants Williams and Lebert knew that this crossing was dangerous; that they had placed a watchman there in the summer season to warn their invitees and had scraped and improved the road and that by this invitation to a dangerous place they shared with the railroad a responsibility for the death of the deceased.

But the individual defendants did not own the road approaching the crossing. The most that was shown was that they scraped it on a few occasions and made repairs to it. There was proof that it was also repaired by public authority and that it was used by the public, extensively enough for the jury to say that in the case of the railroad it must be treated as a public crossing.

But even if the individual defendants owned the road, I do not think they can be held liable for the negligence of the railroad. A railroad crossing is not, in itself, a dangerous condition, as may be an excavation into which a person might fall as in *Beck* v. *Carter* (68 N. Y. 283) ; or a dangerously created accumulation of ice, as in *Dack* v. *Trustees of Peekskill Academy* (247 App. Div. 797) ; or the maintenance of a dangerous third rail close to a passageway commonly used as in *Danna* v. *Staten Island Rapid Transit Ry. Co.* (252 App. Div. 776).

The railroad crossing itself was not maintained by the individual defendants at all. It was dangerous in any legal sense only if the railroad company by some act of negligence made it dangerous, and the individual defendants had the right to presume that the railroad would not act negligently.

Whether they assumed this or not, they are not responsible under any tenable theory that has sanction in this State for the negligent operation of trains. Certainly the rule of liability for the " snare " on one's own land considered in *Beck* v. *Carter* (*supra,* p. 292) has no application to the individual defendants' relation to this railroad crossing. A business inviting the public to come through a street " dangerous " in the sense that it is heavily traveled and accidents are known to occur there could not be liable for injuries of its customers caused by third parties with or without intervening negligence.

No doctrine of law sanctions either so wide a control or so broad a responsibility for the acts of others. (See on this question *Murphy* v. *Avery Chemical Co.,* 240 Mass. 150.) That the scraping of the road possibly decreased visibility at the crossing is too tenuous a theory upon which to base a verdict on this record for the occurrence of the collision with a railroad train.

The motion of the individual defendants Williams and Lebert is granted; the verdict against them is set aside, and the complaint dismissed.

The motion of the Ulster County Construction Company to assess costs against the plaintiff as administratrix is denied.

Submit orders.