**Willie C. HOOKS, Plaintiff,**

v.

**NEW YORK CENTRAL RAILROAD COMPANY, Defendant.**

**Civ. No. 7353.**

United States District Court
N. D. New York.

Feb. 13, 1963.

Goldbas & Goldbas, Utica, N. Y., Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N. Y., George S. Sullivan, Syracuse, N. Y., of counsel, for plaintiff.

Kernan & Kernan, Utica, N. Y., James S. Kernan, Jr., Utica, N. Y., of counsel, for defendant.

JAMES T. FOLEY, District Judge.

The plaintiff, Willie C. Hooks, an itinerant farm worker, was struck by a train of the defendant railroad company on the morning of July 2, 1958 and severely injured. The accident happened while Hooks was crossing over on foot the four mainline tracks of the railroad at a farm crossing located on the Koury farm in open country near Oriskany, New York. After a well-tried presentation by experienced lawyers, a verdict of $30,000.00 was returned by a jury in plaintiff's favor, and the important question is whether the verdict should be allowed to stand. My judgment, after a review again of my rough notes and excerpts of the transcript of the testimony of the plaintiff furnished to me is that the jury verdict must fall and be disregarded as a matter of law. The sole ground for such decision is the insufficiency and inadequacy in the proof of the plaintiff, as I view it, to carry the burden he must

under the law of New York that he was free from contributory negligence in any degree that may have caused or contributed to cause the accident.

I am frank to state that during the trial there was doubt in my mind on this important issue of contributory negligence. Some concern by the jury on the issue is evidenced by its return after approximately an hour of deliberation with a question concerning the possible apportionment of negligence. It was for the reason of doubt in my mind that decision was reserved upon the motion by the defendant for a directed verdict at the close of the evidence, and after the return of the verdict upon the renewal of such motion, together with the alternative motion to set aside the verdict and order a new trial. (F.R.Civ.Proc. rule 50(b); Johnson v. New York, N. H. & H. R. R. Co., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77.) Such reservation, particularly when there is doubt on a substantial point of law and insufficient time under trial pressures to absorb all the factual disputes, was made in accordance with settled and practical policy in this Circuit. (Fratta v. Grace Line, 2 Cir., 139 F.2d 743, 744; 5 Moore's Fed.Prac. (2nd Ed.) pg. 2320.) If I am wrong now in this ruling, the verdict can be reinstated by the federal appellate Court of this Circuit.

In its motions against the verdict, the defendant raises other points: the sufficiency of the evidence to prove negligence on its part under the New York concept of due and timely warning that must be applied; the private nature of the crossing that might make the plaintiff a trespasser instead of a licensee or invitee and thus affect the degree of care due and the type of warning to be given by the railroad under the circumstances and to be considered as factual questions by the jury in determining the responsibility of the railroad for the happening of the accident. I am content with the determination made at the trial as to these questions and the reasoning with which they were charged and left with the jury as questions of fact. There is no merit in the challenge to the amount of the verdict inasmuch as the injuries were serious, the medical and hospital expenses very costly, and the evidence of permanent disability sufficient. I am not conscious of serious error in the reception or admission of testimony or exhibit evidence, and this summary is made to emphasize the singleness of the issue, contributory negligence, upon which the ruling herein is made.

Supreme Court Justice Bergan of New York, one of its ablest and now Presiding Justice of the Appellate Division, Third Department, in his clear and concise style, characterized the problem of contributory negligence in these railroad crossing cases as it must be weighed in sufficiency for submission to a jury, or in upholding the verdict if submitted, as a delicate one with a long and controverted history in the New York Courts. (Fischer v. N. Y. Central R. R. Co. (1947), 188 Misc. 72, 73, 66 N.Y.S.2d 557; see also Shoifet v. N. Y. Central R. R. Co., 2 Cir., 265 F.2d 208.) Negligence law is a volatile field of law, and it is agreed the term negligence itself is quite incapable of precise standards of accurate definition. The facts of life and the exercise of common sense and good judgment are the most reliable guides for application to the particular facts involved that are different in each case. (Jamison v. Encarnacion, 281 U.S. 635, 641, 50 S.Ct. 440, 74 L.Ed. 1082; Pokora v. Wabash Railway Co., 292 U.S. 98, 104, 54 S.Ct. 580, 78 L.Ed. 1149; Schulz v. Pennsylvania R. R. Co., 350 U.S. 523, 525, 76 S. Ct. 608, 100 L.Ed. 668.) Many may not be aware, but the question is open in the United States Supreme Court whether state or federal principles are to control these diversity cases as to sufficiency of evidence to take the case to the jury or to support a verdict. (Dick v. New York Life Insurance Co., 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935; O'Connor v. Pennsylvania R. R. Co., 2 Cir., 308 F.2d 911, 914; 5 Moore's Fed.Prac. (2nd Ed.) Section 38.10.) If federal standards were to be the measure, the burden placed upon the present plaintiff to show

freedom from contributory negligence would be considerable. Justice Holmes bluntly stated that when a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him, and he knows that he must stop for the train, not the train stop for him. (Baltimore & Ohio R. R. Co. v. Goodman, 275 U.S. 66, 69–70, 48 S.Ct. 24, 72 L.Ed. 167.) The decision was limited by Justice Cardozo in Pokora only to qualify the dicta that under certain circumstances of known danger a driver, before crossing, would have to stop and get out of his vehicle. (Pokora, supra; see Butler v. Chicago, R. I. & P. Ry. Co., D.C., 46 F.Supp. 905, 908.) However, my reasoning is based upon New York authorities that in my judgment particularly fit this factual situation on the issue of contributory negligence. Further, it should be noted that I am extremely conscious, and always have been as a trial judge, that the verdict of a jury should not be lightly disregarded or set aside. My approach has been to view the evidence in the light most favorable to the plaintiff, and to give the plaintiff the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn. (5 Moore's Fed.Prac. (2nd Ed.) pg. 2316; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L. Ed. 520.)

A simple résumé of the acts and conduct of the plaintiff from his own testimony convinces there is no possible inference or hypothesis in the evidence that will support intelligent conclusion he acted in the manner that a prudent and reasonably careful person would under the existing circumstances. He was crossing on foot, on a bright, sunny, clear morning high-speed, busy, mainline tracks elevated from the countryside and roads at a crossing with which he admits he was familiar. As he arrived at the crossing after going up the grade to it walking generally from the South to the North, he saw a train coming from the East to the West a distance of 800 to 1,000 feet away. He was carrying his fish-pole in his right hand and can of bait in his left. He waited for this train to arrive and proceed across the crossing, and then he moved over Tracks 1 and 2 to stand five feet away from this train while it continued by. It was a long freight train about 1.37 miles in length. Then, while this train passed by close to him, he waited and kept observing it until the caboose was 40 yards away from him to the West. He kept his eyes on the caboose of the train going away from him, and testified he saw two men "hollering and motioning at him" from the rear of the caboose, although he could not hear what they said. According to his testimony, he stood in his same position looking toward the caboose and after the motioning turned his head to the right (East), saw no trains, and started to walk across. He then continued across the No. 3 track that the train had just passed him on and over the space between that track and the No. 4 track. This distance is at least one of 17 feet, and he admitted he did not look to the left (West) again at the track on which the caboose was going away from him until he heard, as he described it, the "Wah Wah" of the locomotive coming at him on Track 4. This train was travelling from West to East, in the opposite direction but parallel to the train upon which he previously had his eyes on the men on the caboose before he commenced to walk.

■ Under these circumstances, generally outlined, the plaintiff seems to be disqualified under a wealth of pertinent New York case law with principles that affect and apply with unusual particularity to the conduct of the plaintiff previous to and at the time of the accident. It would seem that a meandering crossing on foot apparently oblivious to the apprehension of possible danger that should be expected on these mainline tracks does not meet the standards of the New York authorities. It should be noted that some of the cases cited are death cases where since 1921 the burden to prove contributory negligence by New York statute is placed upon a defendant. Some involve automobiles, but the majority involve pe-

destrians. There is a noted and clear distinction contained in the cases as to the conduct of the pedestrian in crossing railroad tracks as weighed against that of the driver or passenger of an automobile. (Cordell v. N. Y. Cent. & Hudson R. R. Co., 75 N.Y. 330, 334; Woodard v. N. Y., L. E. & W. R. R. Co., 106 N.Y. 369, 374–376, 13 N.E. 424; Young v. N.Y., L.E. & W. R. R. Co., 107 N.Y. 500, 504, 14 N.E. 434; Heaney v. Long Island R. R. Co., 112 N.Y. 122, 19 N.E. 422; Rodrian v. N.Y., N.H. & H. R. R. Co., 125 N.Y. 526, 528, 26 N.E. 741; Daniels v. Staten Island Rapid Transit Co., 125 N.Y. 407, 410, 26 N.E. 466; Avery v. N.Y., O. & W. Ry. Co., 205 N.Y. 502, 506, 99 N.E. 86, 42 L.R.A.,N.S., 158; Castle v. Director-General of Railroads, 232 N.Y. 430, 434–435, 134 N.E. 334; Schrader v. N.Y., C. & St. L. R. R. Co., 254 N.Y. 148, 151, 172 N.E. 272; Zaun v. L. I. R. R. Co., 139 A.D. 719, 721, 124 N.Y.S. 511). Some of the significant statements on the particular pages noted above fit the situation here: in Cordell to the effect that if the deceased had looked and then stood still he would have been safe, and he would certainly have been safe if he had stepped backward instead of forward, and there was nothing to prevent him from arresting his progress; in Woodard stating it is absolutely certain that at any time within ten or fifteen feet deceased had only to look and pause to be safe, and that the men were on foot, wholly masters of their own movements; in Castle stating that to have walked fifteen or twenty, perhaps thirty, feet and then to have crossed in front of it without again looking was not the action of a careful and prudent man; in Schrader that if deceased had looked at a proper viewpoint he would have seen the approaching train in time to avoid the accident; in Zaun if his view of the train coming from the East was temporarily obstructed by the train passing on the other track, it was his duty to wait until the temporary obstruction had

disappeared; in Daniels to the effect that the circumstances pointed not to absence of negligence but rather its existence inasmuch as the passage of the train on the down track obstructed vision in the direction from which the other train came, and certainly looking after crossing the south track before stepping on the north track would have allowed sight of the approaching train.

With full realization that decisions of this kind are serious and drastic, the impact of this steady reasoning in New York must control, and to me is indistinguishable for application to the facts here. The distraction theory upon which the plaintiff relies and seeks to isolate as a consequence of importance under the facts in Greany v. L. I. R. R. Co., 101 N.Y. 419, 427, 5 N.E. 425, is minimized by the conclusion therein that the plaintiff was not heedless but looked in both directions along the track. This authority is seldom cited or recognized in New York and was distinguished shortly thereafter. (Woodard v. N. Y., L. E. & W. R. R. Co., supra, 106 N.Y. p. 375, 13 N.E. pp. 426, 427). The conduct of the plaintiff under the existing circumstances does not measure up to standards in the other numerous cases, and compels conclusion that he was guilty of contributory negligence as a matter of law.

Therefore, the motion of the defendant for a directed verdict reserved upon is now granted and judgment n. o. v. (nonobstante veredicto) shall enter in favor of the defendant as a matter of law, dismissing the complaint on the ground the plaintiff has not shown by a preponderance of the evidence freedom from contributory negligence. The alternative motion of the defendant to set aside the verdict and for a new trial must be ruled upon and is hereby denied. (Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; 5 Moore's Fed.Prac. (2nd Ed.) Section 50.13).

It is so ordered.