It did appear, however, that an unsigned paper had been sent to defendant, containing notice of the fire, and an itemized list of articles and value. While it was conceded that this paper did not amount to, and could not take the place of, formal proofs of loss, yet it was held that there was evidence upon which a jury might find that the defendant had waived such proofs. That evidence consisted of proof that the defendant retained the formal notice for 60 days without objection, and, soon after receiving it, offered to pay to plaintiff the sum of $38 as an adjustment of the loss. The same facts appeared upon the present trial, and justified the submission of the case to the jury on this feature. There is no proof of the amount of plaintiff's loss, but this is due to the fact that all the evidence offered on that point was excluded. Among other things, plaintiff sought to show the cost price of certain articles which had been destroyed. In the case of articles destroyed by fire, such evidence has frequently been held to be competent, and is often the only available evidence. An attempt was also made to prove value by a witness who had some knowledge of the property destroyed, and had been for some years in the business of dealing in secondhand furniture. It may be that he was not a very satisfactory expert, but we think that his evidence should have been received, leaving it to the jury to give it such weight as it deserved.

Judgment reversed and new trial granted, with costs to appellant to abide the event. All concur.

---

### CLARKE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. April 28, 1905.)

RAILROADS—INJURY TO PERSON ON TRACK—TRESPASSER—OBLIGATION OF COMPANY.

> A third person erected a sign board indicating the direction to take to reach his boathouse on the other side of railroad tracks, and a stairway outside of the railroad right of way down to the level of the tracks. Outside of a plank near the foot of the stairway to the tracks, there was nothing to indicate any pathway across the tracks. Where the stairway reached the end of the track there was a gateway in the company's railroad fence for the use of the employés in reaching a signal tower. *Held,* that plaintiff, while crossing the tracks at this point for the purpose of reaching a clubhouse on business disconnected with the business of the third person was a trespasser, and the company owed him the duty merely of refraining from wantonly injuring him.

Appeal from Trial Term, Westchester County.

Action by William A. Clarke against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, HOOKER, and MILLER, JJ.

John F. Brennan, for appellant.

I. Henry Harris (Leon Kronfeld, on the brief), for respondent.

WOODWARD, J. We think this judgment cannot be supported. The plaintiff's version of the case, as developed upon the trial, and as it must be deemed to have been found. by the jury, is that the plaintiff was injured seriously while crossing the tracks of the defendant by being hit by a locomotive drawing one of the latter's trains at the rate of 50 miles an hour, under the following circumstances: The plaintiff was a musician, and had been engaged to play for a dancing party given by the Wyanoke Boat Club at its clubhouse on the east bank of the Harlem river. He started, with two companions, to fill this engagement, just before midnight of November 26, 1901. Jerome avenue is a public highway in the borough of Manhattan, running in a northerly and southerly direction, and parallel with the Harlem river, which flows in a channel some 20 feet below the level of this highway. Along the east bank of the Harlem are various boathouses, among them the Wyanoke, and between these boathouses and Jerome avenue the defendant operates its double-track railroad; the latter being some 15 feet below the surface of the highway, down a somewhat abrupt embankment. Within the limits of Jerome avenue one Charles Booth, a witness, but not otherwise involved in this action, had erected a sign board bearing the inscription, "This Way to the Boat House," and in connection with this sign the same party had constructed a staircase, outside of the defendant's right of way, down to the level of the tracks, and some one had placed a short piece of planking from near the foot of this staircase to the first rail on the side nearest to Jerome avenue. It does not appear definitely who placed this planking upon the defendant's premises, but, aside from this planking, four or five feet in length, upon the defendant's right of way, there was nothing to indicate any walk or pathway across the tracks. They presented an appearance identical with any other section of rock-ballasted railroad. Across the tracks from this staircase was a line of wire elevated several inches above the level of the ground, used for operating the signals for the management of trains at this point, and beyond this, to the westward, between the wire and the fence, was a beaten footpath running parallel with the railroad; and it was in evidence that the customers of Charles Booth, who was a boatbuilder, and members of the various boating clubs, had at times made use of this stairway in reaching the defendant's right of way from Jerome avenue, and had crossed over the tracks, jumped over the signal wires, and had reached Mr. Booth's place, or had passed in one direction or another along this beaten pathway upon the defendant's right of way in reaching their boathouses. On the west side of the right of way, at least one month before the accident here complained of, the defendant had erected a wire fence between this path and the Wyanoke Boat Club house, and the plaintiff's theory appears to be that these individual trespasses on the defendant's right of way, extending over a considerable number of years, in connection with Mr. Booth's sign board and his stairway, which the defendant does not appear to have had any power to prevent, constituted such an invitation to the plaintiff to make use of

this method of reaching the Wyanoke Boat Club house that the defendant owed him the active duty of giving warning when its trains were approaching this alleged crossing, and that the evidence justified the jury in finding that the defendant had not given a proper warning, although it appears affirmatively that the bell on the engine had been rung for a long distance before and at the time of reaching the point of the accident, due to the engineer's own sentiments of humanity.  It should, perhaps, be mentioned, that the fence on the easterly side of the defendant's right of way, at the point where Mr. Booth's stairway came down the embankment, shows a gateway, without a gate, and this is strongly urged as an evidence that the railroad company had acquiesced in this alleged crossing, although it is quite as likely that this opening was designed for the use of the defendant's employés in reaching the signal tower and doing other work which might be required; and, in any event, it could hardly be construed as anything more than a permission to cross over the tracks to the premises of Mr. Booth, opposite, for it was he who had erected the sign and had constructed the staircase, and it was he alone who occupied the premises on the opposite side.  The mere fact that there was an opening in the fence could not be construed into a general invitation to enter upon and pass along the defendant's right of way in reaching any of the various boathouses which lined the river for a mile or more, and it is conceded that the Wyanoke Boat Club house was 500 feet along such right of way from the point where the plaintiff came down the stairway and where he was injured by being struck by the locomotive of one of defendant's trains.

While the respondent calls attention to a number of cases decided in courts of undoubted authority, we fail to find any which support the plaintiff's theory; none in which mere individual trespasses upon the right of way of a railroad, where there was no open and visible crossing, used at least in a measure by the public as a highway, has been held sufficient to impose the duty of active care, except in a case where the railroad owed some contractual duty to the person injured.  It should be borne in mind, in considering the opening in the fence, and which is practically the only evidence that the railroad company made any concessions, that the defendant owed the plaintiff or the public no duty to erect any fence at this point.  The statutory duty to erect fences along its right of way is designed merely to prevent horses, cattle, sheep and hogs from straying upon the tracks from adjacent lands, and the statute specially provides that "no railroad need be fenced when not necessary to prevent horses, cattle, sheep, and hogs from going upon its tracks from the adjoining lands" (chapter 565, p. 1082, Laws 1890, as amended by chapter 367, p. 712, Laws 1891, and chapter 676, p. 1382, Laws 1892), and there is no evidence and no presumption that there was any danger of horses, cattle, sheep, or hogs going upon this right of way in the borough of Manhattan; and, even if there was, the opening here under consideration would not give the plaintiff any rights.  Moreover, the statute provides that "no person other than those connected with or employed upon the

railroad shall walk upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same." Chapter 565, p. 1101, Law 1890, as amended by chapter 676, p. 1394, Laws 1892 (section 53, Railroad Law). Here there was no pretense that there was a highway. The plaintiff did not come upon the defendant's premises for the purpose of going across upon a generally traveled way to the opposite side of the railroad, but for the purpose of trespassing upon the defendant's right of way for a distance of 500 feet, and he was not, therefore, lawfully upon the defendant's premises, and the latter owed him no other duty than to refrain from wantonly injuring him. There is nothing to indicate that the railroad company had anything to do with the erection or maintenance of the sign, "This Way to the Boat House"; nothing to indicate that it even knew of such sign, for it was in a public highway, and in a position where it owed no duty of having such knowledge; and as for the stairway, it was upon private premises, beyond the control of the defendant; and, aside from a hole in the fence, which it was not obliged to maintain for the protection of the plaintiff, and the laying of a few planks on one side of the track—and who laid this planking is not at all certain—there is nothing to suggest any duty on the part of the defendant to this plaintiff, and all that was done is entirely consistent with the theory that they were necessary to the convenience of the defendant's servants in operating the signal tower and doing other work in connection with the operation and maintenance of the railroad. In any event, the crossing—if by any possibility this could be construed to be a crossing—was one designed as a license to Mr. Booth and his patrons, who would naturally visit his boatbuilding plant in the daytime, and could not be extended to a duty to this plaintiff, who entered upon the right of way about midnight, and for the avowed purpose of reaching the Wyanoke Boat Club's house some 500 feet along the defendant's tracks. The defendant owed no duty to the Wyanoke Boat Club or its members. It owed no possible obligation to afford a right of way to such premises; and, as there was no crossing at this point for the public, no unobstructed crossing for any one, and the only persons who were shown to have used this way were, so far as appears, trespassers, the plaintiff must be deemed to have entered upon the defendant's premises in violation of law, and to have done so without the right to expect that the defendant would give any warning of the approach of its trains, especially at the hour of midnight. This being the case, it was error on the part of the learned court at Trial Term to refuse to dismiss the plaintiff's complaint on defendant's motion, based on the proposition that the plaintiff had failed to show negligence on the part of the defendant.

The suggestion of the respondent that the Wyanoke Boat Club had a right of way to its premises by necessity, as against the defendant, is clearly untenable, and need not be discussed.

The authorities brought forward in support of the main contention—that the plaintiff had a right to go to the jury on the ques-

tion of defendant's negligence at this alleged crossing—do not justify the judgment. McDermott v. N. Y. C. & H. R. R. Co., 28 Hun, 325, was a case in which the railroad company rented certain premises along its right of way to one who boarded the plaintiff. The only means of ingress and egress was by way of the railroad premises. The defendant had pointed out no particular method of getting out, and the plaintiff in going to town was run down by one of defendant's engines running backward, displaying no lights and giving no warning. It was held that the defendant owed the plaintiff, under the circumstances, the duty of reasonable care; and very properly. But no such relation existed in the present case, and it has no bearing on the facts now before us. In Cordell v. N. Y. C. & H. R. R. Co., 70 N. Y. 119, 26 Am. Rep. 550, an accident occurred at a place which was "in some respects a public crossing," and the decision rests upon an entirely different question. In Byrne v. N. Y. C. & H. R. R. Co., 104 N. Y. 362, 10 N. E. 539, 58 Am. Rep. 512, there was a conflict in the evidence as to whether there was a public highway, and the case was submitted to the jury upon the assumption that there was not It appeared, however, that an alley intersected the railroad, and that this alley was commonly used by the public, the question presented being the duty of the defendant to persons using such alley. This comes as close, perhaps, as any of the cases relied upon, but here there was a clear public use of an alley crossing the railroad, and with full knowledge on the part of the railroad of such public use. In Barry v. N. Y. C. & H. R. R. Co., 92 N. Y. 289, 44 Am. Rep. 377, it was undisputed that the owners of lots abutting on the railroad at the point of the accident had a right of way across the defendant's tracks, and that for more than 30 years the public were in the habit of crossing these tracks, and it was held that the defendant owed the duty—as it no doubt did—of using reasonable care not to injure the plaintiff. In all of these cases, however, there is at the foundation of the liability a public right of crossing, as distinguished from the trespasses of individuals, and we find no authority holding that under the circumstances of this case a defendant can be held liable for negligence in not giving warning of its approach.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.