EDWARDS v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department.　October 1, 1915.)

1. RAILROADS ⟺300—CROSSING—LICENSE.

　　The doctrine of a permitted crossing over railway tracks rests upon implied invitation to use such a crossing, and not upon a mere tolerated use, as of a pathway.

　　[Ed Note.—For other cases, see Railroads, Cent. Dig. § 955; Dec. Dig. ⟺300.]

2. RAILROADS ⟺381—PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE—DISREGARD OF WARNINGS.

　　Where the defendant railway company had provided a plank crossing with a flagman and bell, and another overhead crossing, and deceased went upon the track between the two crossings in disregard of the ringing of the bell, blowing of the engine whistle, and shouts of the flagman, and when, had he looked, he must have seen the approaching train, his negligence negatives liability of the company, though he followed a path which was more convenient than the two provided.

　　[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1285–1293; Dec. Dig. ⟺381.]

Appeal from Trial Term, Westchester County.

Action by Minnie E. Edwards, as administratrix of the estate of Lehman Edwards, deceased, against the New York Central & Hudson River Railroad Company.　Judgment for plaintiff, and order denying new trial, from which judgment and order defendant appeals.　Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, STAPLETON, RICH, and PUTNAM, JJ.

John F. Brennan, of Yonkers, for appellant.

Thomas J. O'Neill, of Yonkers (L. F. Fish, of New York City, on the brief), for respondent.

PER CURIAM.　The New York, Susquehanna & Western Railroad runs northerly along the east side of the Hackensack river.　Parallel with its system lie the West Shore tracks to the east.　The nearest tracks are 38½ feet between outside rails.　The line of the defendant's property is 31 feet from the easternmost rail of the Susquehanna line. The station building at Ridgefield Park, N. J., about 19 feet wide, is set between these two systems, and is used in common by both railroad companies.

Plaintiff's intestate came from New York in the smoker of a local Susquehanna train.　He got out near the northerly end of the station. After a few steps toward the north, he started to cross the defendant's tracks.　It was dark (about 5:30 p. m. of December 29, 1911), and the station was lighted.　The train which decedent had left was also starting up, making some noise.　As decedent stepped on the first and most westerly West Shore track, he was struck and killed by the locomotive of the second section of the fast express, known as the Continental Limited, bound southerly.　The defendant maintained a planked crossing at the southerly end of the station.　It was planked for a width of 16½ feet along the tracks.　Here vehicles and people passed.　At the

northeast corner of this crossing was a post and automatic 10-inch gong. At the southeast corner was a flagman's shanty, where the flagman gave his warnings.

On the northerly side of the station was an overhead bridge crossing defendant's tracks, with stairs at either end. The west end began its ascent at about 21 feet north of the north end of the station. The bridge was about 16 feet in height, and the incline of the stairs covered a lateral space of about 35 feet. At the time of this casualty, some snow had fallen on this overhead bridge, so that it was claimed 5 or 6 inches was remaining upon it. The testimony was that this bridge was seldom used; one of plaintiff's witnesses estimated that in the last 13 years he had not seen the bridge used by as many as 25 persons.

On the easterly side of the West Shore tracks there was a bar fence running from the south crossing to the posts supporting this overhead bridge. It consisted of wooden posts about 10 or 12 feet apart, through which ran iron pipe, making a fence about 3 or 4 feet in height. There was some testimony that some of these rails had been broken and had fallen down. The public street was to the eastward. On the Hackensack river side was a private dock, which was reached from the crossing at the south of the station, called "Merhoff's dock."

Passengers arriving by the Susquehanna trains often went right over the tracks of the West Shore line, sometimes climbing over the bar-fence on the east; at others they would cross in a more or less diagonal direction, and get around the north end of the fence, and come out through an opening between the overhead bridge and the buffer of an eastern siding—an unfenced space of about 10 feet.

Defendant's tracks run from the north end of the station quite straight northerly along a distance of 1,353 feet. Even with the curve above that point a locomotive could be seen at a distance of about 2,310 feet. When a train came within 4,500 feet of the station, by electric contact, the automatic gong would be set ringing. That the bell on the post was ringing was testified to by three witnesses, who then stood by it. The locomotive whistle was also heard by them, and further it was testified that the flagman and one of the witnesses shouted to the deceased a warning just as he was stepping on the track. The engineer and fireman of the train also confirmed the proof of the engine's headlight, and the sounding of her whistle, which started at a point about 1,600 feet away.

[1] The doctrine of a permitted crossing, of a de facto path, rests on actual rights of way, or may sometimes be grounded on an established foot passageway—one not merely tolerated by the railroad, but by implication invited by it to be so used. In a comparatively sparse locality like this, the doctrine of such a crossing cannot be set up to shield impatient commuters in their habit of spreading out and rushing over barriers, in too great haste to wait and use a proper crossing, or to walk up and over the bridge.

[2] But mere knowledge, and even the existence of a worn path as an approach to a railroad track, does not of itself create a liability to one using such a crossing. Wright v. Boston & Albany R. R. Co., 142 Mass. 296, 7 N. E. 866; Sutton v. N. Y. C. & H. R. R. Co., 66 N. Y.

243; Corson v. Atlantic City R. R. Co., 83 N. J. Law, 517, 83 Atl. 885. There must be some conceded right of way (Lamphear v. N. Y. C. & H. R. R. Co., 194 N. Y. 172, 86 N. E. 1115; Clarke v. N. Y. C. & H. R. R. Co., 104 App. Div. 167, 173, 93 N. Y. Supp. 525), and mere acquiescence, unless it ripens into a right of passage, is not enough (Kubinak v. Lehigh Valley R. R. Co., 79 N. J. Law, 438, 75 Atl. 443). Here the fact of a proper planked crossing, equipped with a bell and guarded by a flagman, indicate the way provided, and negative any license to cross 70 feet or 100 feet further up the track, especially where defendant had erected an overhead bridge. The fact that the path provided is less convenient than the short cut attempted makes no difference in the rule. The railroad company invited passage where it had best guarded against danger, by bell and by flagman; and if from another railroad passengers see fit to venture on defendant's tracks away from the safe crossings, they must be deemed to take the risk of their impatience.

The proofs preponderatingly show the plaintiff's intestate guilty of negligence on his own part, in disregarding the defendant's signals and warnings.

The judgment and order are therefore reversed, and a new trial granted; costs to abide the event.