Willie C. HOOKS, Plaintiff-Appellant,

v.

NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellee.

No. 97, Docket 28330.

United States Court of Appeals
Second Circuit.

Argued Nov. 1, 1963.

Decided Jan. 24, 1964.

John F. Lawton, Syracuse, N. Y. (Gold-bas & Goldbas, Utica, N. Y., on the brief) (Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N. Y., of counsel), for plaintiff-appellant.

James S. Kernan, Jr., Utica, N. Y. (Kernan & Kernan, Utica, N. Y., on the brief), for defendant-appellee.

Before SWAN, FRIENDLY[1] and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge:

This suit was brought to recover for personal injuries sustained when plaintiff was struck by a freight train on July 2, 1958, as he was crossing defendant's right of way on foot. Federal jurisdiction is based on diversity of citizenship. After trial before a jury, a verdict for $30,000 was returned, but the judge granted defendant's motion for a directed verdict on the ground that the evidence showed plaintiff to have been contributorily negligent as a matter of law. He had reserved decision on this motion prior to sending the case to the jury, and the motion was renewed orally after verdict in accordance with Rule 50(b).

The evidence concerning the accident is substantially undisputed, but a fairly full statement of the facts will be helpful to an understanding of our decision. Plaintiff, a migratory farm worker, was engaged by a labor contractor for work as a harvester on the farm owned by Benedict Koury in the Village of Oriskany, Oneida County, New York. The farm buildings, including the barracks where the harvest workers were quartered, are located south of the New York Central main line railroad tracks, which run east and west at that point. Some fields, however, are north of the tracks, lying between them and the Mohawk River and New York State Barge Canal, which parallel the railroad. Access to the field is provided by a farm crossing, at right angles to the tracks, which consists of planks laid between the rails and a graded path through the ballast between the tracks. The crossing had been installed by the railroad, pursuant to § 52 of the New York Railroad Law, McKinney's Consol.Laws, c. 49, many years before and it had continued to maintain it. The tracks at this point are laid on an embankment somewhat above the level of the adjacent land, and run straight and level for .44 mile to the west and 2.54 miles to the east of the crossing. Farm personnel, but not the general public, made extensive use of the crossing during the planting and harvesting seasons, when men and equipment frequently crossed the tracks to reach the fields. On the date of the accident, however, the harvest in the fields had not yet started and plaintiff offered no proof of extensive use during the preceding period. About 25 workers were then at the farm; this number increased to about 200 when the full harvest began.

The plaintiff had been at the Koury farm for some time, employed in harvest-

ing some fields lying south of the tracks. On the morning of the 2d, a bright sunny day, he had some time off from work and decided to go fishing in the river. Carrying a pole and bait can, he walked along the path toward the crossing. As he reached the level of the tracks he noticed a train approaching from the east on the third track over. He crossed the first two tracks, and stood about five feet from the third track to let the westbound train go by. The train was a long one, some 160 cars, and took about two minutes to clear the crossing. As the caboose passed, he noticed some of the crew members standing on the rear platform and motioning to him, which motion he did not understand. He watched the westbound train for about 40 yards, then crossed the third track and looked to the east along the fourth track. Suddenly, he heard a horn blast from his left, and too late saw an eastbound train on that track within a few feet of him. He was struck by this train along the south edge of the fourth track. The engineer of the eastbound train testified he was running at 46 miles per hour as he approached the crossing and that he did not sound his horn until he saw the plaintiff just before the accident, because the crossing was not a public one and there was no custom or practice of sounding the horn at such farm crossings. However, he also testified that he had seen people working in the fields on the north side of the tracks from time to time. Although he had never actually seen persons on the crossing, it might reasonably be inferred from his testimony that he knew of its use by farm personnel.

The questions presented on this appeal are whether the judge erred in instructing the jury that the railroad owed Hooks a duty of reasonable care in operating its trains over the crossing; whether, if it did, there was any evidence on which a jury might find that it was negligent in the performance of this duty; and

whether the trial judge erred in setting aside the verdict and directing judgment under Rule 50(b), on the grounds that plaintiff was contributorily negligent as a matter of law.[2]

■ We think the judge correctly charged the jury that plaintiff had a right to be on the crossing and was owed a duty of reasonable care. For all practical purposes, plaintiff was an employee of the Koury farm on the date of the accident. As such, he would seem to have the right to go from one part of his employer's premises to another, even on his own business, without being considered a trespasser because his route necessarily crosses a railroad right-of-way. See Annotation, 167 A.L.R. 1253, 1294–1298 (1947). Any other rule would be an exceptionally constricting doctrine which, in the absence of strong New York authority, we would be unwilling at this time to espouse.

On the second question, whether the train's operation could reasonably be found to have been negligent, there is a more important question. The railroad correctly argues that the only possible evidence of negligence is the failure of the eastbound train's engineer to sound a warning as he approached the crossing, since the speed of the train under these circumstances was clearly proper, as was the engineer's conduct in the brief interval after he observed the plaintiff walking toward the tracks and before the accident. However, it says, a duty to sound a warning at a private crossing has been imposed by the New York cases only in situations where such extensive use of the crossing has been made by members of the public as to give it the character of a public crossing. Zambardi v. South Brooklyn Ry. Co., 281 N.Y. 516, 24 N.E.2d 312 (1939); Lamphear v. New York Cent. & H. R. R. Co., 194 N.Y. 172, 86 N.E. 1115 (1909); Byrne v. New York Cent. & H. R. R. Co., 104 N.Y. 362, 10

2. With the parties, we assume, without deciding, that the sufficiency of the evidence to go to the jury on all these questions is to be determined as a matter of New York substantive law. See Dick v. New York Life Ins. Co., 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959); Evans v. S. J. Groves & Sons Co., 315 F.2d 335, 342 no. 2 (1963).

N.E. 539 (1887) In none of these cases, however, was the question one of the duty owed to farm employees at a farm crossing; plaintiffs in all were members of the public crossing at a place where a way had been established by custom or use. It is true that in Morris v. Lake Shore & M. S. R. Co., 148 N.Y. 182, 42 N.E. 579 (1896), which did involve a farm crossing, the court approved a charge which in effect said that "the defendant owed the decedent no duty to sound its whistle or ring its bell either at the Dixon crossing or the farm crossing where the accident occurred." We do not read this language, however, as indicating that under no circumstances may failure to give warning at a farm crossing be considered negligence. In Clarke v. New York Cent. & H. R. R. Co., 104 App.Div. 167, 93 N.Y.S. 525 (2d Dep't 1905), relied on by the railroad, the court's decision rested on the ground that plaintiff was a trespasser who attempted to cross the tracks at a point where there was no path or proof of any substantial use. The court held, as an alternative ground, that if a crossing did exist at this point, it existed only for the benefit of a class, patrons of a boatbuilder whose premises lay between the tracks and the Harlem River, of which plaintiff was not a member.

Although the question is not altogether free from doubt, we think the issue whether the railroad exercised due care in the operation of the train was properly left to the jury. In view of the knowledge of the engineer of the use of the crossing, which the railroad had installed, the fact that a view would be blocked until the eastbound train was almost on it; and the fact that numerous workers were in and about the farm at this time, it was permissible for a jury to find that failure to give some warning signal was negligence.

■ On the question of contributory negligence, we have concluded that it too should have been left to the jury. The cases relied on by the trial court for its decision, and those cited by the railroad, involve situations where it appeared from the evidence or was hypothesized by the court, that the pedestrian crossing the tracks did not look at all before going upon them. Here, on the other hand, the plaintiff's uncontradicted testimony was that he waited to cross until the westbound train was forty yards, or 120 feet, from him, which means that his view of the fourth track was somewhat greater than this figure, and the jury might also have inferred that he thought the motions of the men on the caboose were intended to warn him of danger approaching from the east. We think this brings the case within the rule of such decisions as Elias v. Lehigh Valley R. Co., 226 N.Y. 154, 123 N.E. 73 (1919); Carr v. Pennsylvania R. Co., 225 N.Y. 44, 121 N.E. 473 (1918); Zwack v. New York, L. E. & W. R. Co., 160 N.Y. 362, 54 N.E. 785 (1899); Greany v. Long Island R. Co., 101 N.Y. 419, 5 N.E. 425 (1886); Spannknebel v. New York Cent. & H. R. R. Co., 217 App.Div. 345, 111 N.Y.S. 705 (1908), which indicate that, where the person crossing the tracks has taken some precaution and looked to some extent before venturing across, the adequacy of his precautions will ordinarily be a jury question. Of course, had the plaintiff waited a longer time before crossing, he would have seen the eastbound train approach. But it is not necessary under the New York law as we understand it, that he wait until his view is absolutely unobstructed. Whether his conduct was reasonable under the circumstances would seem to be a question which the jury, presumably composed of twelve reasonable men and women, is best suited to answer.

Reversed and remanded with directions to enter judgment in accordance with the verdict.

SWAN, Circuit Judge (dissenting):

I disagree with my brothers' decision only on the point of plaintiff's contributory negligence. Judge Foley's opinion, 214 F.Supp. 4, is convincing to me that his direction of a verdict was correct. I think it should be affirmed.