Jeanne Parr **NOTH** as Executrix of the **Last Will and Testament of Charles James Noth, Plaintiff,**

v.

Kathleen T. **SCHEURER, Defendant.**

No. 67–C–14.

United States District Court
E. D. New York.
May 24, 1968.

McGovern, Vincent & Connelly, New Rochelle, N. Y., for plaintiff; Frank H. Connelly, New Rochelle, N. Y., of counsel.

David T. Walsh, New York City, for defendant; Alfred J. Brumme, New York City, of counsel.

BARTELS, District Judge.

In this diversity action by the plaintiff-executrix, a Connecticut resident, against the defendant, a New York resident, for pain and suffering prior to death and for the unlawful death of her husband (pursuant to Sections 119 and 130 of the New York Decedent Estate Law, McKinney's Consol.Laws, c. 13) arising out of an automobile accident, the plaintiff brings this motion for summary judgment.

Decedent, Charles James Noth, was on the night of March 4, 1966 a passenger in the front seat of a Chevrolet sedan owned and driven by the defendant, Kathleen T. Scheurer, who had picked him up in Manhattan at approximately eight o'clock for the purpose of driving him to his apartment in Stamford via the New England Thruway. It was a drizzly night and the defendant lost her way in the Bronx and did not arrive at the Thruway until a few minutes after 10 P.M. There was virtually no traffic on the Thruway and after travelling for approximately five minutes thereon at a speed of somewhere between 35 and 48 miles per hour, the defendant steered her automobile across the outside lane where she had been driving, then across the middle lane and finally into the left or inside lane. At this particular point her statements before the Department of Motor Vehicles and her testimony at her deposition are not identical. Before the Motor Vehicle Department she said she steered across these lanes for no particular reason and that "the road looked to like it was all full of these oil bubbles and I had just changed lanes and with that my wheel struck the abuttment"; that after she moved into the left lane the car started to skid, although she had complete control of the car at the time, and then "it hit the abuttment". She further testified at this hearing that the left front wheel of the car "must have hit that mall for me to go into the complete uncontrolled right turn"; that the car started to travel sideways; that she applied her brakes and held one hand on the steering wheel to try to bring it to the left and "I held on to my passenger with my other hand". She then added that the whole front of her car smashed into the wall in front of her, knocking her

unconscious and causing serious injuries to the decedent, from which he subsequently died.

In her deposition resulting from her examination before trial she stated that the whole thing occurred when she went into the left-hand lane and although she felt no bump in the car, "my front left wheel must have touched that abutment and that's what caused me to go into the skid. And it wasn't a skid where the car swerved, it was like it wanted to go into a complete circle." She made no statement about oil or anything else on the road, and offered as an excuse for proceeding into the left-hand lane (although she could not "swear to this") that she was looking for a familiar sign such as a Gun Hill Road sign. She made no statement about holding on to her passenger with one of her hands. She stated that she did not travel long in the left-hand lane but that the accident "happened as I was going into the left lane". She further added that she had straightened out in the left-hand lane and the car struck the curb on the side of the mall. Up to that time she said that her car had not skidded but after she hit the abutment the car did skid and that the thing that caused the skid was the contact between the front tire of the car and the curb and that thereafter she went clear across the road and struck the wall. Her testimony as to the cause of the skid was more or less her opinion. To use her phraseology, she stated that "the curb must have rubbed my tire and that's what caused the skid."

Although the automobile was equipped with seatbelts, neither the defendant nor the decedent was wearing the same at the time of the accident. Defendant knows of no eyewitnesses to the accident other than herself. On the day following the accident the car was inspected by the Police Department whose report describes the vehicle as "demolished" by collision with "bridge overpass support column at Connors Street", with "motor pushed in toward front seat".

Defendant submitted no personal affidavit in opposition to the summary judgment motion, although she did submit a transcript of the hearing held before the Department of Motor Vehicles on November 7, 1966, at which she testified under oath. Her attorney submitted an affidavit which, of necessity, is of little weight since he has no first-hand information about the accident. Plaintiff claims that this transcript would be inadmissible as evidence on the defendant's behalf, although it would be admissible against her if the plaintiff offered it, citing Fleury v. Edwards, 14 N.Y.2d 334, 251 N.Y.S.2d 647, 200 N.E.2d 550 (1964). It is true that although defendant's testimony at the Motor Vehicle hearing could not be introduced by her at the trial, it can by a liberal interpretation be considered as an affidavit submitted on behalf of the defendant. Since the defendant submitted no affidavit upon this motion in her own behalf but was content to rely upon her testimony before the Department of Motor Vehicles and her counsel's statements and conclusions, the Court is permitted to give greater weight to her statements at the examination before trial.

I

In essence, plaintiff claims that this is a case where the accident would ordinarily not have occurred without the negligence of the defendant and that in the absence of a satisfactory explanation by the defendant, an inference of negligence is inescapable.

The only explanation of the accident consistent with the lack of negligence on the part of the defendant lies in her brief statement at the Motor Vehicle Department hearing, otherwise undeveloped, that "Well first of all the road looked to like it was all full of these oil bubbles and I had just changed lanes and with that my wheel struck the abuttment". She does not state whether hitting the oil caused the wheel of the car to strike the curb or whether it prevented her efforts to regain control of the automo-

84

bile after it started skidding as a result of hitting the curb or even whether she noticed the oil too late to take precautionary measures. The attorney for the defendant states that perhaps the defendant did not actually strike the curb at all but presumably skidded because of the oil or wetness of the highway. But his affidavit is an argument based upon no facts, and is entitled to no weight because he was not present at the accident and is not an expert on the subject. As a matter of fact the defendant's testimony at the Motor Vehicle Department hearing is as helpful to her as her testimony at the examination before trial because her reference to oil bubbles is not causally connected with the accident, and her reference to throwing her right hand out to hold on to her passenger suggests negligence by her failure to keep both hands on the wheel. Consequently, it would seem that the circumstances of this case are sufficient to raise an inescapable inference that the accident was caused by the defendant's negligence.

However, the Court's function upon a motion of this kind is not to follow its inclination or decide the issues of fact but only to ascertain whether such an issue exists according to the law of the State of New York[1] as enunciated by the State courts. Older cases such as Galbraith v. Busch, 267 N.Y. 230, 196 N.E. 36 (1935), and Lahr v. Tirrill, 274 N.Y. 112, 8 N.E.2d 298 (1937), held that the swerving of an automobile from a highway or the crossing of the center line was not even prima facie proof of negligence, but that the burden devolved upon the plaintiff to establish by direct proof the negligence of defendant in the management of the vehicle. Such cases were in fact overruled by Pfaffenbach v. White Plains Exp. Corp., 17 N.Y. 132, 269 N.Y.S.2d 115, 216 N.E.2d 324 (1966), holding that the plaintiff no longer need establish the lack of an inherent defect in the automobile as part of his affirmative case, thus applying a more modern and flexible concept of the proof necessary to establish negligence.

But *Pfaffenbach* does not go the whole distance. As appears from the language of the court, the mere showing that a vehicle proceeds over to the wrong side of the road and causes damage without an explanation by the driver merely presents a case "prima facie sufficient to go to the jury to determine liability. The explanation of the defendant, if he gives one, will also usually be for the jury." (P. 135, p. 116 of 269 N.Y.S., p. 325 of 216 N.E.2d). Obviously, a prima facie case of negligence is not sufficient to justify a summary judgment. Reference is also made to Czekala v. Meehan, 27 A.D.2d 565, 276 N.Y.S.2d 279 (2d Dept. 1965), affirmed, 20 N.Y.2d 686, 229 N.E.2d 230 (1967), where the court stated, "Absent an explanation by defendant as to how plaintiff's decedent, a guest-passenger, met his death when the car operated by defendant's decedent crashed into a highway divider and the concrete base and wooden guard rails resting thereon, plaintiff's proof that the vehicle, in abnormal fashion, left the highway spelled out a cause of action on which factual questions of negligence and contributory negligence were presented" (27 A.D.2d p. 566, p. 280 of 276 N.Y.S. 2d). Despite the extreme unlikelihood of defendant's exoneration by a jury, this Court believes it is bound to deny summary judgment upon those authorities. Gerard v. Inglese, 11 A.D.2d 381, 206 N.Y.S.2d 879 (2d Dept. 1960), and Dillon v. Humphreys, 56 Misc.2d 211, 288 N.Y.S. 2d 14 (Sup.Ct. Suffolk Cty. 1968), granting summary judgments, present different factual backgrounds from the present one because the defendants in those cases explained the abnormal action of their vehicles by acts which constituted negli-

---

1. Both parties proceed upon the assumption that New York law is applicable and in fact the record indicates that the contacts in New York are sufficient to justify the application of that law. In addition, the Court has found no authority indicating that Connecticut law is different.

gence. Defendant has not gone quite that far in this case.

## II

No New York authority has been found holding that there is any duty upon the driver or passenger of an automobile to wear a seatbelt.[2] Consistent with the sole New York case in point, Dillon v. Humphreys, supra, the Court believes that at all events a passenger's failure to wear a seatbelt is not related to the cause of the accident and consequently should not be considered as contributory negligence, although such failure may be a causative factor in determining the extent of damages for which plaintiff should be allowed recovery. As stated in Dillon v. Humphreys, supra, at p. 18, "* * * the testimony of defendant clearly indicates that the collision would have occurred even if plaintiffs had been wearing seat belts. Failure to use them may have contributed to the severity of the injuries, but had no causal relationship to the occurrence of the accident." It is hornbook law that the negligence of the plaintiff will not bar recovery unless it is also a proximate cause of the accident. See, Lee v. City Brewing Corp., 279 N.Y. 380, 18 N.E.2d 628 (1939); Lewis v. Rowland, 225 App.Div. 25, 232 N.Y.S. 71 (4th Dept. 1928).

In accident cases involving the failure to wear seatbelts, there is a distinction to be made between causes of action for injuries and causes of action for wrongful death. The utilization of the seatbelt in the latter case conceivably might have prevented the extreme result of death and the cause of action arising therefrom, whereas in the former case its use would only have reduced the extent and degree of the injuries. This is a highly speculative question which if considered, would be a question for the jury, imposing a heavy burden of proof upon the defendant. See, Kavanagh v. Butorac, 221 N.E.2d 824

(Ind.App.1966); Bentzler v. Braun, 34 Wis.2d 362, 149 N.W.2d 626 (1967).

Motion for summary judgment denied. This is an order.

---

2. See Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65 (N.C.Sup.Ct.1968); Lipscomb v. Diamiani, 226 A.2d 914 (Del.Super. Ct.1967); and Brown v. Kendrick, 192 So.2d 49 (Fla.Dist.Ct.App.1966), where courts held that a passenger was under *no duty to wear seatbelts.*