**Geoffrey N. CALVERT, Plaintiff-Appellant,**

**v.**

**KATY TAXI, INC., a corporation, George Austin, Kenneth Hamblin and Geraldine Dufek, Defendants-Appellees.**

**No. 380, Docket 32889.**

United States Court of Appeals Second Circuit.

Argued Feb. 18, 1969.

Decided June 26, 1969.

William L. Schierberl, Thomas J. Whalen, Condon & Forsyth, New York City, for plaintiff-appellant.

James B. Reich, Brooklyn, N. Y., Nathan Cyperstein, Flushing, Leo Gilberg, New York City, for defendant Katy Taxi, Inc.

Paul A. Crouch, Robert Hill Nix, Baier, Chamberlin & Hartig, New York City, for defendant Dufek.

Before Mr. Justice CLARK,* WATERMAN and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge:

On September 23, 1964, at approximately 8:00 A.M. a taxicab owned by defendant Katy Taxi, Inc., after colliding with a small Triumph sports car at a busy New York City intersection, mounted the curb and struck and in-jured plaintiff while he was walking on the sidewalk on his way to work.[1] This action to recover damages for injuries sustained as a result of the accident was commenced in the United States District Court for the Southern District of New York initially against four defendants, the allegedly negligent drivers and the owners of the two vehicles involved in the collision. The basis for federal jurisdiction is diversity of citizenship. By the time the action came on for trial plaintiff was proceeding against only two of the originally named four parties-defendant. Plaintiff's case against the driver of the taxicab, an employee of Katy Taxi, Inc., was severed by the trial judge when the judge was informed that he had died in the meantime from causes unrelated to this accident, and the action against the driver of the sports car, one Kenneth Hamblin, who had never entered an appearance, was dismissed due to insufficient service of process upon him.[2]

I

The action was tried to a jury before Judge Motley. At the close of the plaintiff's evidence defendant Katy Taxi moved for a directed verdict. The trial judge reserved decision and the case proceeded. The defendant Geraldine Dufek, the alleged owner of the sports car, her husband and her son testified that she had sold the vehicle to Hamblin and had removed her plates about a month before the accident. The taxicab company presented no evidence and again moved for a directed verdict. Again the trial judge reserved decision and submitted the case to the jury which returned verdicts in favor of the defendant Dufek and in favor of the plaintiff against the defendant Katy Taxi

---

* Associate Justice, United States Supreme Court, Retired, sitting by designation.

1. The vehicles collided at the intersection of Broadway and Barclay Street in lower Manhattan. The Katy taxi was proceeding southerly on Broadway and the Triumph sports car was traveling westerly on Barclay Street. Plaintiff was in the vicinity of the Transportation Building at 225 Broadway when he was struck.

2. After a marshal had been unable to effect service Hamblin was served by a process server engaged by plaintiff. The court below ruled the service was ineffective as it did not comply with Rule 4(b), Fed. R.Civ.P. This ruling is not contested on appeal.

for $5,000.00. Thereafter defendant Katy Taxi moved for judgment notwithstanding the verdict, and plaintiff moved that the award of damages be set aside as inadequate. Defendant's motion was granted and plaintiff's motion was denied. This appeal by plaintiff is from these two rulings below adverse to him.

The question presented is whether there was such a lack of evidence supporting plaintiff's claim that defendant was liable for his injuries as to justify the trial judge in setting aside the jury verdict awarding the plaintiff $5,000 and, despite that verdict, ordering the entry of a judgment for the defendant Katy Taxi. We hold that the district court committed reversible error; we find that the evidence the jurors had before them was sufficient for them logically to infer that the vehicle owned by Katy Taxi was driven in a negligent manner, and that that negligence was a proximate cause of plaintiff's injuries.

In reaching our determination we have not been unmindful of the well-accepted principle in all jurisdictions that the mere fact that an accident or injury has occurred, with nothing more, does not constitute a prima facie case of negligence. See Prosser, Torts § 39, at 215 (3d ed. 1964). And, also, we have not been unmindful that if injury is caused by the negligence of someone that negligence must be brought home to the defendant in the action before the plaintiff may be permitted to go to the jury, see, e. g., Corcoran v. Banner Super Market, Inc., 19 N.Y.2d 425, 431, 280 N.Y.S.2d 385, 388, 227 N.E.2d 304 (1967) (Keating, J.); nor that when a trial judge has viewed facts in the light most favorable to the plaintiff it appears that an inference

that a particular defendant was not negligent is just as probable as an inference that that defendant was negligent, a trial judge has a duty, upon proper motion, either to direct the jury to return a verdict for the defendant on the ground that there is insufficient proof of liability to the plaintiff to justify submission of the case, or, if the case has been submitted, to set aside a verdict if one favorable to the plaintiff has been returned. See, generally, James, Proof of the Breach in Negligence Cases (including Res Ipsa Loquitur), 37 Va.L. Rev. 179, 185–186 (1951); Prosser, Res Ipsa Loquitur in California, 37 Calif. L.Rev. 183, 194 (1949); Wigmore, Evidence § 2494 (3d ed. 1940). Also, unless the trial judge thinks reasonable men could infer from the evidence a *greater likelihood* of negligence on the part of the defendant, the plaintiff has no right to go to the jury, Nash v. Raum, 149 F.2d 885, 888 (3 Cir. 1945); James, Functions of Judge and Jury in Negligence Cases, 58 Yale L.Rev. 667, 674 (1949), because any verdict for the plaintiff could only be the product of surmise, speculation, and conjecture, and could not be derived from fairly weighing evidence.

Though the ruling below was not explained on the record we have no doubt that the trial court intended to apply the above enunciated standards. We hold, however, that the court below misapplied those standards for we find that the total quantum of proof was sufficient to entitle plaintiff to have his case submitted to the jury and to support the jury's verdict in plaintiff's favor. Notwithstanding the lack of eyewitness testimony concerning the events of the accident,[3] the jury reasonably and properly could have inferred from the physical evidence and the very con-

---

3. The testimony of the two persons who could have given eyewitness accounts of the accident was not produced. Defendant George Austin, the taxicab driver, had deceased by the time of trial. Defendant Kenneth Hamblin, the driver of the Triumph, was not located until shortly before trial when defendant Dufek dis-

covered that Hamblin had been inducted into the Armed Forces and was stationed at Fort Hood, Texas. A continuance for the purpose of obtaining a deposition from Hamblin was requested but the request was denied. No deposition of the taxicab driver had ever been taken.

vincing reconstruction of the path of the Katy vehicle that the taxicab was traveling at an excessive rate of speed when it and the Triumph collided. See Edick v. Davenport, 218 App.Div. 198, 218 N.Y.S. 120 (4th Dep't 1926). The physical evidence tended to prove that the defendant's car traveled approximately 100 feet from the point of its collision with the Triumph before it struck the plaintiff. Then, after hitting him, it continued its forward movement, careened off a brick building, and proceeded approximately another 30 feet before finally being halted by a store front.

Moreover, before striking the plaintiff, successive impacts, first with a street curb in mounting the sidewalk and then with a street sign it knocked down, must also have necessarily diminished the vehicle's speed. Yet, despite the additional impact from then striking the plaintiff, the taxicab's progress was never halted until it crashed into, first, the brick building, and then a store front. When these facts are taken into consideration, along with the testimony of the investigating police officer that Hamblin, the Triumph driver, admitted going through a red light as it was about to change,[4] the 25 m. p. h. speed limit then required by law on the New York City street here involved, N.Y.C. Traffic Regulation § 60(a);[5] and the fact that the accident occurred in the midst of the morning rush hour, a time of day when the traffic is ordinarily heavy,[6] the jury could easily have concluded that the Katy vehicle was speeding and was being operated in an imprudent manner, for if the cab had been operated in a prudent

manner it would not have traveled such a frightening course for so far a distance despite so many obstacles to its progress. See Brandt v. Jones, 7 A.D. 2d 234, 181 N.Y.S.2d 909 (3d Dep't 1959).

Katy Taxi, however, claims that the testimony of the police officer investigating the accident exonerates it from liability. This claim is without merit. The nub of the patrolman's testimony involves the notes of his conversation with the operator of the Triumph which he read to the jury. He testified that:

> "Mr. Hamblin stated that a white Rambler jumped the light, blocking the light from his vision, and he said, 'I went through also.'"

We agree that this testimony from a disinterested police officer is surely worthy of belief and is entitled to a significant amount of weight. But this evidence merely shows the lack of due care on the part of Hamblin and by no means negates the possibility that the operator of the Katy vehicle was negligent.

Moreover, if defendant maintains that there is some question whether the evidence satisfied the "sufficiency of the evidence" standard required in all jurisdictions, we hold that, under the circumstances shown to have been present when plaintiff was struck and injured, plaintiff established a prima facie case of negligence under the law of the State of New York and his proof was sufficient to require the submission to the jury of the issue of defendant's negligence.

---

4. See discussion in text, *infra*, at p. 2599.

5. As of October 1, 1964 the maximum speed limit was increased to 30 m. p. h. N.Y.C. Traffic Regulation § 60(a).

6. Irrespective of the City traffic regulation setting a maximum speed limit the law requires that "no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual

potential hazards then existing. In every event, speed shall be controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." N.Y.C. Traffic Regulation § 60(c). Also see N.Y. Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, § 1180.

■ In diversity jurisdiction cases the several courts, state and federal, to which the plaintiff might have brought his action, have the power to formulate their own standards concerning the sufficiency of the evidence that would warrant submission of a case to a jury but, to date, we of this circuit have chosen to hold that a case should be submitted if submission would be required by the law of the state where the federal court is sitting, San Antonio v. Timko, 368 F.2d 983, 985 n. 1 (2 Cir. 1966); Mull v. Ford Motor Co., 368 F.2d 713 n. 4 (2 Cir. 1966); Hooks v. New York Central R.R., 327 F.2d 259, 261 n. 2 (2 Cir. 1964); Evans v. S. J. Groves & Sons Co., 315 F.2d 335, 342 n. 2 (2 Cir. 1963); Carlson v. Chisholm-Moore Hoist Corp., 281 F.2d 766, 769 (2 Cir.), cert. denied, 364 U.S. 883, 81 S.Ct. 172, 5 L.Ed.2d 104 (1960); Gutierrez v. Public Service Interstate Transp. Co., 168 F.2d 678, 679–680 (2 Cir. 1948); Noth v. Scheurer, 285 F.Supp. 81, 84 and n. 1 (E.D.N.Y.1968), and have had no need thus far to determine whether an independent, and presumably more lenient, federal standard might, nevertheless, be required. See Judge Friendly's exposition in Evans v. S. J. Groves & Sons Co., *supra*. Though our present policy may be questioned, see Safeway Stores v. Fannan, 308 F.2d 94, 96–97 ns. 3, 4 (9 Cir. 1962), we ascertain no compelling reason at this time to alter our practice and shall continue to assume the desirability, and, without deciding it, also the validity of that policy.[7]

■ However, due to the continuing development of, and the ongoing changes in, today's concepts of legal liability, we, in determining the state law that we are to apply, cannot permit ourselves to be confined by state court decisional approaches if we have sound grounds to believe that the highest state court would in a case like ours adopt a different approach than the approaches in prior cases. Reginsky v. Richardson-

Merrell, Inc., 378 F.2d 832, 851 (2 Cir. 1967); Merritt-Chapman & Scott Corp. v. Public Util. Dist. No. 2, 319 F.2d 94, 103 (2 Cir. 1963); Evans, *supra,* 315 F.2d at 344–345; Strubbe v. Sonnenschein, 299 F.2d 185, 188–189, 97 A.L.R. 2d 1386 (2 Cir. 1962).

Generally, where two moving vehicles (A's and B's) are involved in a collision, there are four possible explanations for an injury to a non-contributorily negligent bystander or passenger:

(1) Both A and B were negligent.

(2) Neither A nor B were negligent.

(3) A alone was negligent.

(4) B alone was negligent.

In a case such as the one now before us, where plaintiff's suit is against B alone, and plaintiff himself is in no way contributorily negligent, most courts have consistently held that plaintiff does not have a sufficient case to get to the jury if he is unable to produce evidence explaining why the collision occurred. James, Proof of the Breach in Negligence Cases (including Res Ipsa Loquitur), 37 Va.L.Rev. 179, 209 (1951). A rule to the contrary has been thought to be unfair due to the total lack of proof of any circumstance from which it might reasonably be inferred that the collision of two vehicles was solely caused by the want of care on the part of the one defendant B, for it also might reasonably be inferred that the unexplained collision was caused otherwise.

But, as noted by Professor James, while possibilities (1) and (4) above represent one half of the possible explanations for the accident, "it does not follow that they represent only fifty per cent of the probabilities." For it is entirely conceivable that the lack of care by both operators (possibility (1)) occurs with greater frequency than the other three possible explanations. And, "if it does, the balance of probabilities" should lie "with plaintiff in such a

---

7. Likewise, the U. S. Supreme Court has twice declined to determine this issue. Mercer v. Theriot, 377 U.S. 152, 84 S.Ct. 1157, 12 L.Ed.2d 206 (1964); Dick v. New York Life Ins. Co., 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959).

case," and a prima facie case of negligence thereby be established. Also see Prosser, Res Ipsa Loquitur in California, 37 Calif.L.Rev. 183, 207–208 (1949).

Until recently this "two equal inferences" rule was a dominant force in the New York courts and precluded an individual injured in an unexplained automobile accident from ever establishing a prima facie case of negligence by proving only that the accident occurred. Even when but one moving vehicle was involved, a plaintiff-passenger had to show the accident ensued from the operator's faulty operation, and was not caused by a mechanical defect in the vehicle, before the issue of the operator's negligence could be submitted to the jury, Galbraith v. Busch, 267 N.Y. 230, 196 N.E. 36 (1935), for the possibility of an unknown defect was said to be equally inferable with the inference of negligent operation as the possible proximate cause of plaintiff's injuries. Finally, in 1966, however, New York's departure from this rigid formula for determining the sufficiency of the evidence became apparent when Pfaffenbach v. White Plains Express Corp. 17 N.Y.2d 132, 269 N.Y.S.2d 115, 216 N.E.2d 324 was decided.[8] An awareness of the non-utility of strict legal rules as instruments of adjudication and of the necessity for "more legal flexibility on what is negligence" in automobile accidents was central to the court's determination.

In *Pfaffenbach* defendant's truck on a slippery road crossed over into the lane in which the automobile in which plaintiff was a passenger was proceeding in an opposite direction. Plaintiff was permitted to get to the jury without having to eliminate an unknown defect in the automobile of his host or the negligence of his host as possible reasons for the collision between the vehicles. To be sure, the facts in the case before us are different. There is no slippery road, no skid, and no defendant's vehicle on the wrong side of the road. Arguably, the New York Court of Appeals may have intended to keep the "two equal inferences" rule intact and only intended in a case like *Pfaffenbach* to declare that mechanical failure and negligent operation were no longer equal probabilities. See Maresca v. Lake Motors, Inc., 56 Misc.2d 655, 289 N.Y.S.2d 908, 912 (Suffolk Cty. 1968) where the court stated: " * * * the *Pfaffenbach* opinion * * * cannot be said to have overturned the two equal inferences rule generally in automobile cases * * *." But most of the New York case law which has evolved since *Pfaffenbach* indicates that if the New York Court of Appeals were confronted with our case it would today hold for the plaintiff. As in *Pfaffenbach*, we hold that here, too, the need for flexibility has been demonstrated and that the plaintiff should not be required to do more than plaintiff has done in order to establish a prima facie case against the single defendant. See Carter v. Castle Electric Contracting Co., 26 A.D.2d 83, 271 N.Y.S.2d 51 (2d Dep't 1966).

Though *Pfaffenbach* did not involve a suit by a passenger against his host, subsequent cases have held the "two equal inferences" rule inapplicable when the passenger has so sued. Czekala v. Meehan, 20 N.Y.2d 686, 282 N.Y.S.2d 553, 229 N.E.2d 230 (1967); Rosenthal. v. Monastra, 27 A.D.2d 749, 277 N.Y.S. 2d 432 (2d Dep't 1967); Mercado v. Figueroa, 25 A.D.2d 726, 269 N.Y.S.2d 246 (1st Dep't 1966). Also see Sherman v. Pullman, 29 A.D.2d 1044, 289 N.Y.S. 2d 802 (4th Dep't 1968); Richter v. Trailways of New England, Inc., 28 A. D.2d 737, 282 N.Y.S.2d 148 (2d Dep't 1967). Moreover, the deaths of the only witnesses to the accident have not prevented the New York judiciary's further eradication of the rule of "equal probabilities." For instance, in Czekala v. Meehan, *supra*, *Pfaffenbach* was applied despite the fact the case involved

---

8. The *Pfaffenbach* result had been predicted by our court (Friendly, J.) three years earlier in Evans v. S. J. Groves & Sons Co., *supra*.

an "unwitnessed accident where the passenger, whose estate is suing and the driver are both dead," and it was contended that the "passenger, as a guest, assumed a risk of unknown defects in the automobile."

But in Micale v. Drew, 23 N.Y.2d 712, 296 N.Y.S.2d 155 (1968), affirming 29 A.D.2d 566, 286 N.Y.S.2d 1022 (2d Dep't 1967), the New York Court of Appeals (5–2) affirmed without opinion the Appellate Division, which had affirmed (3–2) without opinion, the trial court's dismissal of plaintiff's complaint after the close of plaintiff's evidence. There, plaintiff, a passenger in one of two vehicles which collided at an intersection, sued the drivers of both vehicles. He had no recollection of the accident, and neither of the defendants testified at trial. One had died while the action was pending and his administratrix was substituted in his place, and the other, Drew, was never produced at the trial. The evidence relative to how the collision occurred was contained in a pretrial deposition of the surviving, but absent, defendant. Plaintiff did not argue to the Appellate Division that proof of the collision of the two vehicles at an intersection established a prima facie case of negligence against the operators of both vehicles. The Appellate Division, therefore, clearly never reached this question. That court only held that the pretrial deposition was insufficient evidence that the deponent was negligent, and that, anyway, it was totally inadmissible against the estate of the deceased defendant because the deposition examination had been held without notice to him.

Likewise, though plaintiff argued the question to the New York Court of Appeals, it seems that that court, too, did not consider whether a non-participatory plaintiff's naked proof that there had been a collision establishes a prima facie case of negligence. That court may have declined to entertain the question because of the judicially formulated doctrine which has foreclosed the New York Court of Appeals from reviewing questions which have neither been presented to the lower New York courts nor passed upon there. See Cohen v. Karger, The Powers of the New York Court of Appeals § 161 (rev. ed. 1952). Though the court has not infrequently put aside this self-made principle and has decided questions raised for the first time on appeal, there is less of a tendency to do so when the resolution of the issue would not conclusively terminate the litigation. See, id. In Micale a decision favorable to the plaintiff would have required a new trial. Compare this with Persky v. Bank of America National Ass'n, 261 N.Y. 212, 185 N.E. 77 (1933). There is also some authority in the cases indicating that the Court of Appeals will not consider a new question on appeal if the consideration of the question might reverse a determination appealed from, but may do so for purposes of affirmance. Maloney v. Hearst Hotels Corp., 274 N.Y. 106, 111, 8 N.E.2d 296 (1937); People v. Bresler, 218 N.Y. 567, 571, 113 N.E. 536 (1916); Martin v. Home Bank, 160 N.Y. 190, 199, 54 N.E. 717 (1899); Cardozo, Jurisdiction of the Court of Appeals (2d ed.) 47, 292. In any event, it appears improbable that the application of the *Pfaffenbach* rationale to a resolution of *Micale* was ever actually considered by the court.

Additionally, the case of Trappio v. National Auto Renting Co., 20 N.Y.2d 848, 285 N.Y.S.2d 82 (1967) reinforces our position that we can accurately predict that under New York law today plaintiff's proof would have been sufficient to have entitled him to get to the jury. In *Trappio* the trial court ruled that the evidence was sufficient to support a jury finding of negligence when defendant's truck, hit in the rear by another vehicle after stopping for a red light at an intersection, thereafter traveled a distance of 54 feet, mounted the sidewalk, and struck the plaintiffs, who were pedestrians standing on the street corner. There was conflicting testimony as to whether the stop by defendant was an abrupt or a leisurely one, but it was

undisputed that the truck had come to a complete stop and was motionless when hit by the other vehicle. Furthermore, a police officer who at the time was on school crossing duty ,at the intersection testified that he saw defendant's truck "being pushed" by the other automobile; that the vehicles did not separate until the truck mounted the sidewalk; and that the operator of the other vehicle endeavored to leave the scene after the accident. Also see 27 A.D.2d 750, 279 N.Y.S.2d 343 (2d Dep't 1967) (dissenting opinion).

Notwithstanding this overwhelming evidence in favor of the defendant, the Appellate Division (3–2) and the Court of Appeals (7–0), without opinions, declined to hold that plaintiffs' evidence tending to show that defendant was negligent was insufficient as a matter of law and affirmed the judgment for plaintiffs.[9]

Certainly the New York Court of Appeals could not treat the facts at bar less favorably to the plaintiff than the *Trappio* facts were treated. As in *Trappio*, the present claimant is an innocent bystander who was struck by a vehicle after it collided with another automobile.[10] And, as the court apparently held in *Trappio*, where there was proof that in a two-vehicle collision one of the two colliding vehicles was being operated negligently the issue of whether the other vehicle, the vehicle hitting the plaintiffs, was also being operated negligently is properly an issue for the jury to resolve on the ground that the evidence was not insufficient for the jury to have logically and reasonably concluded that both vehicles were being negligently operated and thereby that

both proximately caused plaintiffs' injuries.

Furthermore, the facts in our case are more favorable to the plaintiff than the *Trappio* facts for the taxicab was not hit in the rear while motionless. See Carter v. Castle Electric Contracting Co., 26 A.D.2d 83, 271 N.Y.S.2d 51 (2d Dep't 1966); Rogers v. Glassman Memorial Home, Inc., 27 A.D.2d 542, 275 N.Y.S.2d 228 (2d Dep't 1966). Thus, in *Trappio*, despite the fact that the driver and owner of the truck would have established a prima facie case of negligence in a suit against the owner and operator of the automobile that struck their motionless truck, the possibility of the truckmen's liability to the plaintiff-pedestrians was nevertheless left for the jury's determination.

In summary, we are convinced that the two cases, *Trappio* and the present one, are not significantly distinguishable [11] and that the New York Court of Appeals would here apply the approach used in *Trappio* to resolve the issue of whether plaintiff's evidence was sufficient to enable him to go to the jury in the present case.

## II.

As for the adequacy of the jury award, we may set aside a verdict only when it is "palpably and grossly inadequate." Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935); Caskey v. Village of Wayland, 375 F.2d 1004 (2 Cir. 1967).

Though plaintiff put in extensive medical testimony in support of his claims for damages for his pain and suffering and for permanent injuries,

---

9. Accord, Shaw v. Lewis, 55 Misc.2d 664, 286 N.Y.S.2d 758 (Civil Ct.N.Y.1968) (jury could find defendant's failure to control his vehicle was at least a concurrent cause of accident).

10. Clearer proof of the absence of any contributory negligence on the part of a plaintiff is hard to imagine.

11. One distinction should be pointed out. In *Trappio*, unlike the instant case, the

plaintiff sued the drivers of both vehicles, but there is nothing in any of the opinions to imply that this joinder of all possible defendants was a controlling factor in determining the sufficiency of the evidence against the truck driver defendant. Compare this with the well-known California case, Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258 (1944).

**850**

we cannot say, after a review of the trial record, that the jury's award of $5,000 was "palpably and grossly inadequate." Plaintiff suffered no loss of earnings and his medical and hospital expenses were $1,277.69.

### III.

In his Notice of Appeal plaintiff appealed from the entire final judgment but he neither briefed nor argued that he sought a reversal of the judgment defendant Geraldine Dufek obtained against him dismissing his complaint against her. We affirm that judgment.

The judgment below dismissing the plaintiff's complaint against the defendant Katy Taxi, Inc. is reversed and the cause is remanded to the district court for the reinstatement of the jury's verdict in favor of the plaintiff that the plaintiff have judgment against Katy Taxi, Inc. for $5,000 damages. The judgment entered below in favor of Geraldine Dufek is affirmed.